**FIRST AMERICAN NATIONAL BANK EASTERN, Trustee**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, et al.**

No. CIV–2–83–409.

United States District Court,
E.D. Tennessee,
Northeastern Division.

Nov. 23, 1984.

Walter L. Price, Johnson City, Tenn., for plaintiff.

Earl D. Wilson, Scott R. Fransen, Ambrose, Wilson & Grimm, Knoxville, Tenn., for defendants.

Craig J. Donaldson, Knoxville, Tenn., for William B. Greene, Jr. and Sr. and Greene Inv. Corp.

E. Reynolds Davies, Jr., Henry Haile, Morton, Lewis, King & Krieg, Nashville, Tenn., for FDIC.

Dale Allen, Rick Bearfield, Baker, Worthington, Crossley, Stansberry & Woolf, Johnson City, Tenn., for Blount Nat. Bank.

Robert R. Campbell, Dean B. Farmer, Knoxville, Tenn., for Merrill-Lynch.

Bernard E. Bernstein, David L. Buuck and D. Scott Hurley, Claiborne, Buuck & Hurley, Knoxville, Tenn., for Citizens Bank of Sneedville.

Thomas N. McAdams, Knoxville, Tenn., for Joe Snyder.

## ORDER

HULL, District Judge.

This is an action for declaratory judgment on the issue of who is entitled to receive distribution of certain funds currently in the possession of plaintiff First American National Bank—Eastern (FANB) as successor trustee to First Peoples Bank of Washington County (FPB). The action came before the Court for a hearing on cross-motions for summary judgment on November 9, 1984.

### I.

The following undisputed facts gave rise to this litigation:

On January 14, 1969, the shareholders of FPB authorized the bank to increase its capital through the issuance of convertible debentures in the total amount of $700,-000.00 at 6% interest, payable semi-annually, with a maturity date of not more than

fifteen years from the date of issuance; and, by resolution of April 8, 1969, the bank's board of directors approved the issuance of $700,000.00 in principal amount of 6% convertible debentures and directed the bank's officers to prepare the certificates. The resolution also provided, in relevant part, that:

BE IT FURTHER RESOLVED: That following the sale of the debentures there shall be accumulated in a "Sinking Fund" on deposit in the First Peoples Bank in the name of the President as Trustee for the debenture-holders, and to be deposited without interest, the sum of $46,666.67 per annum, which sum when accumulated to the amount of $700,-000.00, or any portion that is accumulated at the time of the payment of the debentures, shall be issued to pay off such debentures as may demand cash at the maturity of the notes or when the notes are called.

The debenture certificates as approved by both the Federal Deposit Insurance Corporation (FDIC) and state banking department provided a maturity date of "on or before June 1, 1984"[1] and contained the following provision:

The [bank] will deposit in the Bank in an Escrow Deposit the sum of at least $46,-666.67 per annum which will be accumulated to provide a fund for the repayment of the debentures.

The sinking fund or escrow account contemplated by the board of directors was established at the bank some time after the issuance of the debentures in June of 1969. No deposits were made until 1970 when the bank transferred $93,333.37 from its general fund into the account. On December 3, 1971, the sinking fund balance was transferred to an account in the trust department of FPB in accordance with the terms of a trust agreement entered into by the bank and itself as trustee for the debenture holders dated November 22, 1971.[2] The trust agreement provided, in relevant part:

THIS TRUST AGREEMENT, made and entered into ... by and between FIRST PEOPLES BANK ... and FIRST PEOPLES BANK, AS TRUSTEE, for the holders of the six (6%) percent Convertible Debentures due 1984...

NOW, THEREFORE, ... the Bank and the Trustee agree as follows:

1. That the Trustee shall act as Trustee for the holders of the six (6%) percent debentures of the Bank due in 1984.

2. That the Bank shall deposit with the Trustee the sum of Ninety Three Thousand Three Hundred Thirty Three Dollars and Thirty Four Cents ($93,333.34) upon the execution of this agreement and shall thereafter during the term of this agreement deposit, on or before the 1st day of May of each year, the sum of $46,666.67 as a sinking fund for the payment of the 6% convertible debentures due 1984 of the Bank.

3. During the term of this Agreement the Trustee shall invest the funds received from the Bank in securities issued or guaranteed by the United States Government and no others and to pay to the Bank, at least annually, any interest earned thereon.

4. The securities held in such sinking fund by the Trustee shall be clearly designated as being held by the Trustee as security for the debenture holders, and shall be physically segregated from other

---

**1.** The debenture certificates also provided that "[t]he indebtedness evidence [sic] by the debentures, is to the extent and in the manner provided in the indenture, subordinate and subject in right of payment to the prior payment in full of all Senior Debt (as defined in the indenture) of the [bank] whether outstanding at the date of the indenture or thereafter incurred. Each holder of this debenture, by his acceptance hereof, agree to and shall be bound by all the provisions of the indenture relating to such subordination." However, it is apparent from the record that no indenture ever existed. This provision, therefore, is not material to the outcome of the case.

**2.** The parties are in dispute as to whether the FDIC advised FPB to transfer the funds in the escrow account to a separate account in the bank's trust department as provided in the trust agreement. This fact, however, is not material to the outcome of the case.

assets held by the Trust Department of the Bank.

5. The Trustee shall have the right at any time to resign and to appoint a Successor Trustee and in the event of the inability of the Trustee to act, then the president of the Bank shall have the authority to appoint a Successor Trustee.

6. The terms of the trust debentures give First Peoples Bank the option to pay the debentures after five (5) years and holders have the option to convert same to stock or be paid in cash. On Proof that First Peoples Bank has exercised its option, and holders have converted or been paid the debentures, this agreement shall terminate and Trustee will deliver the investment or the money from sale of same to the Bank, and the Trust will be terminated.

The bank also transferred the sum of $42,779.79 into the sinking fund on December 3, 1971. Thereafter, with a few exceptions, monthly transfers of $3,888.89 were made beginning December 29, 1971, and ending May 4, 1981. The bank transferred $44,666.67 into the sinking fund on May 4, 1982, $2,000.00 more was added on May 5, 1982, and $46,666.67 was transferred on May 11, 1983, shortly before the bank failed (as of July 24, 1984, the market value of the sinking fund was $751,776.80).

On July 29, 1983, the Tennessee Commissioner of Financial Institutions declared FPB insolvent, and immediately closed and assumed possession of the bank. The FDIC was appointed receiver and the bank is currently in liquidation. Also on July 29, 1983, with the approval of the Chancery Court for Washington County, Tennessee, the FDIC as receiver and plaintiff FANB entered into a purchase and assumption agreement whereby FANB purchased certain assets of and assumed the deposits and other liabilities of the former bank. Pursuant to Section 17 of the Purchase and Assumption Agreement of July 29, 1983, FANB accepted the trust duties and obligations of FPB.[3]

FANB filed this action in December of 1983 seeking a declaration that all of the sinking fund assets in its possession should be paid, *pro rata*, to the holders of the debentures issued by FBP in 1969. The FDIC and the debenture holders were named defendants. Subsequently, the FDIC filed a counterclaim seeking a declaration that it is the lawful owner of the fund in question. Counterclaims were also filed by several of the debenture holders.

## II.

This action is now before the Court on cross-motions for summary judgment by plaintiff FANB, defendant and counterclaimant Joseph C. Snyder, Jr., Executor of the Estate of Beulah Snyder Rose (as a debenture holder), and defendant and counter-claimant FDIC.

The primary question in this case is simply who is entitled to receive distribution of the sinking fund assets—the debenture holders or the FDIC in its corporate capacity as assignee of the receiver of the failed bank and as subrogee to the rights of its former depositors? If the debenture holders are entitled to distribution of the fund, then a number of other issues arise, including: whether the FDIC is entitled to recover payments made into the fund at a time when the bank's capital was impaired; whether the FDIC is entitled to recover interest attributable to the fund after FPB was declared insolvent; whether FANB's attorneys are entitled to recover fees and costs out of the fund; and, in a few instances, who is the lawful owner of certain debentures.

---

**3.** Although FANB accepted the trust duties of FPB, it expressly declined to assume any liability with regard to the trust for retirement of the 6% convertible debentures sold by FPB in 1969. Section 2.4 of the Purchase and Assumption Agreement of July 29, 1983 reads as follows: "*Debentures.* Assuming Bank hereby assumes no liability whatever in connection with payment of the six percent (6%) Convertible Debentures due 1984 (as described in a Trust Agreement dated November 22, 1981 by and between First Peoples Bank of Johnson City, Tennessee, and First Peoples Bank as Trustee for the holder of the six percent (6%) Convertible Debentures due 1984)."

## III.

Section 45–2–208(a) and (b) of the Tennessee Code Annotated provides as follows:

(a) Any bank after obtaining the prior approval of the shareholders owing two-thirds (⅔) of the stock of the bank entitled to vote and after obtaining the prior approval of the commissioner, may issue and sell its convertible or nonconvertible capital notes or debentures. Capital notes or debentures which are by their terms convertible into stock may be converted into shares of common or preferred stock in accordance with such provisions therefor as may be made in such capital notes or debentures with the approval of the commissioner.

(b) Capital notes and debentures issued by banks shall be unsecured indebtedness of the bank and shall be subordinate to the claims of all depositors and of all other creditors of the bank, regardless of whether the claims of such depositors arose before or after the issuance of such capital notes or debentures. *In order to secure the payment of any such capital notes or debentures, however, provisions for sinking funds may be made.* In the event of liquidation, all depositors and all other creditors of the bank shall be entitled to be paid in full before payment shall be made on account of principal or interest on such capital notes or debentures. No payment shall be made at any time on account of the principal thereof unless following such payment the aggregate of the capital, surplus and undivided profits and capital notes or debentures thereafter outstanding shall be at least equal to such aggregate immediately before the original issuance of such capital notes or debentures, or as may otherwise be expressly authorized by the commissioner. The claims of holders of capital notes or debentures shall, however, be superior to the claims of stockholders for dividends or other claims on account of shares of capital stock held by them. (emphasis added).

The debenture holders rely primarily on the second sentence of T.C.A. § 45–2–208(b) as the basis for their claim of entitlement to the funds, while the FDIC, for the most part, relies on the first, third, and fourth sentences of T.C.A. § 45–2–208(b) to support its counterclaim. Statutory construction thus becomes central to the outcome of this case.[4]

## IV.

■ Debentures issued by a bank are ordinarily unsecured indebtedness of the bank and are subordinate to the claims of general creditors. However, sentence two of T.C.A. § 45–2–208(b) makes the provision that: "In order to secure payment of any such capital notes or debentures, however, provisions for sinking funds may be made".

In this instance, the resolutions of FPB's board in 1969 provided, in part, "[t]hat following the sale of the debentures there shall be accumulated in a 'Sinking Fund' in the [FPB] in the name of the President as Trustee for the debenture-holders..." The 1971 trust agreement provided that the agreement was made between FPB and FPB "AS TRUSTEE, for the holders of the six (6%) percent Convertible Debentures..."; that FPB would deposit "on or before the 1st day of May of each year, the sum of $46,666.67 as a sinking fund for the payment of the 6% convertible debentures...", and that "[t]he securities held in such sinking fund ... shall be clearly designated as being held by the Trustee as security for the debenture holders, and shall be physically segregated from other assets held by the Trust Department of the Bank." It is undisputed that an escrow account was established in the name of FPB's President as Trustee for the debenture holders some time after the issuance of the debentures in 1969 and that the money from the escrow account was trans-

---

**4.** No case law directly on point was cited by any of the parties, nor was any such case law found by the Court.

ferred into a segregated account in the trust department of FPB in 1971.

■ The debenture holders contend that the Court, when construing this statute, should assume that the legislature used each word purposefully so that no statutory expression becomes superfluous or without meaning. So construed, the debenture holders contend that T.C.A. § 45–2–208(b) must be read to provide that debentures holders may become secured through provisions for sinking funds. The Court agrees. The debenture holders also claim that the resolutions passed by FPB's board on April 8, 1969, the subsequent issuance of the debenture certificates with the provision for the escrow account, and the trust agreement properly established a sinking fund [5] under T.C.A. § 45–2–208(b). After careful review of the documents and records before the Court along with argument of counsel for the parties at the hearing on November 9, 1984, the Court finds that FPB through its resolutions, debenture certificate, escrow account and trust agreement did properly and legally establish a sinking fund. FDIC asserts that the debentures could not have been paid if they had matured in 1983, because FPB's capital was impaired (since it was insolvent at that time) and that such payment would violate the public policy as expressed by the prohibition contained in the fourth sentence of T.C.A. § 45–2–208(b). The FDIC interprets this sentence to mean that "[p]ayment by a bank *of any principal amount* of its capital notes or debentures cannot occur at a time when payment would reduce the bank's aggregate capital below the amount existing immediately prior to the issuance and inclusion of the debentures in the capital structure of the bank (emphasis added)". However, the sentence does not say "of any principal amount"; rather, sentence four says that "[n]o payment shall be made at any time on account of the principal thereof..."

**5.** *Cf. Warder v. Brady*, 115 F.2d 89, 96 (4th Cir.1940) (A sinking fund under a bond mortgage is a trust fund, the title to which passes from the debtor to the trustee who holds it for the benefit of the bondholders.); *Jenkins et al. v.*

■ The Court finds that reading the statute as a whole, sentence four of T.C.A. § 45–2–208(b) should be construed to prohibit payment into the principal account of a sinking fund while the capital of the bank is impaired, not payment out of the principal to the debenture holders while the capital of the bank is impaired.

■ The FDIC also contends that the transfers made by FPB into the sinking fund were not payments to the debenture holders within the meaning of the banking act because FPB represented that the sinking fund balance was an unrestricted asset of the bank both before and after the establishment of the sinking fund as a trust obligation. Thus, the FDIC reasons that the proper time for determining the bank's ability to pay its debentures is at the time of actual distribution and since FPB became insolvent prior to distribution, the assets must now be distributed by the receiver.

After careful review of the entire record, the Court finds that payments within the meaning of the banking act were made into a clearly segregated sinking fund account—said account was first an escrow account with the president of FPB as trustee for the debenture holders and then became a segregated sinking fund within the trust department of FPB (from which, pursuant to the trust agreement, funds were invested in securities issued or guaranteed by the United States Government and no others) with the bank as trustee for the debenture holders.

■ A further contention of the FDIC is that the third sentence of T.C.A. § 45–2–208(b) prohibits distribution of the sinking fund to the debenture holders now that FPB is in liquidation. This interpretation of the statute, however, would render meaningless the second sentence regarding sinking funds. As pointed out by counsel

*Dugger,* 96 F.2d 727, 730 (6th Cir.1938) (A sinking fund paid to any one other than the lender by a borrower is nothing more than additional security.).

for the debenture holders at the hearing on November 9, 1984, a person does not seek security against the possibility that a bank will remain solvent and prosper; rather, a person seeks security against the possibility of insolvency and liquidation.

■ The final contention brought by the FDIC is that the debenture holders have unperfected security interests in the assets of the sinking fund which are subordinate to the rights of the FDIC as a lien creditor. The FDIC asserts that FPB, rather than the debenture holders, is the true beneficiary of the trust agreement of 1971, and that, as secured creditors of the trust instead of beneficiaries, their security interests are unperfected since they do not have possession of the securities purchased by the trustee. However, after careful review of the trust agreement, the Court finds that the debenture holders are the beneficiaries of the trust agreement. FPB held the funds as trustee for the debenture holders and pursuant to the trust agreement invested the funds in securities issued or guaranteed by the United States Government and no others.

■ At common law, the beneficiary of a trust account with a bank is entitled to the funds held in trust by the bank if the beneficiary can establish the existence of a trust relationship and can trace or identify the trust funds. In this case, a legal document established an escrow account with FPB's president named as trustee for the debenture holders; a formal trust agreement was executed; and payments were made by the bank into the trust fund maintained by the trust department. The funds are easily traced and identified as separate funds—segregated from the other assets managed by the trust department.

## V.

After careful consideration of the entire record before the Court, including oral argument by counsel for the parties at the hearing on November 9, 1984, it is ORDERED that the motions for summary judgment by FANB, Joseph C. Snyder, Jr., Executor of the Estate of Beulah Snyder Rose, and the FDIC are hereby GRANTED IN PART and DENIED IN PART.

Accordingly, judgment is hereby entered declaring:

(1) That the FDIC is entitled to recover from the fund $46,666.67 plus interest paid by FPB into the fund on May 11, 1983, at a time when the bank's capital was impaired. T.C.A. § 45–2–208(b) and T.C.A. § 45–2–1502(d)(2) (Supp.1983).

(2) That the FDIC is entitled to recover all interest or earnings attributable to the fund from July 29, 1983 (the date FPB was declared insolvent) to June 1, 1984 (the maturity date on the debenture certificates), pursuant to paragraph 3 of the agreement.

(3) That FANB's attorneys are entitled to recover their reasonable attorneys' fees and costs to be paid out of the fund.[6]

(4) That the debenture holders are entitled to recover their *pro rata* share of the remaining fund. T.C.A. § 45–2–208(b).

(5) That Scott Fransen as Trustee in Bankruptcy for Earl Wilson is entitled to recover any payment for any debentures held by Earl Wilson or Wilson Properties, Ltd. (undisputed in the record).

(6) That Jennie Velma Bryant, Executrix of the Estate of Frank Bryant is entitled to recover any payment for any debentures held by Frank Bryant (undisputed).

(7) That Merrill Lynch, Pierce, Fenner & Smith, Inc. has no interest in the debentures and is hereby DISMISSED from this action.

(8) That the dispute between Joe Snyder, Executor of the Estate of Beulah Snyder Rose, James Martin, Trustee in Bankruptcy for C.H. Butcher, Jr. and Blount National Bank (over entitlement to any payment for

---

**6.** At the hearing on November 9, 1984, the Court instructed said attorneys to file affidavits itemizing hours and expenses. The Court also indicated that it is willing to consider briefs from interested parties on the issues of the amount of attorneys' fees to be awarded and whether the award should be paid out of the fund.

any debentures which were or may be held by C.H. Butcher, Jr.) was reported to the Court at the November 9, 1984 hearing as having been resolved, and therefore, that this issue is hereby DISMISSED as moot.

The Court was also asked to resolve the issue of who shall be responsible for the payment of capital gains taxes in connection with the fund. The Court hereby declines to render an advisory opinion on the tax issue.