**FIRST AMERICAN NATIONAL BANK–EASTERN, Trustee,
Plaintiff-Appellee,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION,
Defendant-Appellant,**

**Joseph C. Snyder, Jr., Executor of the Estate of Beulah Snyder Rose,
Defendant-Appellee.**

**Nos. 84–6123, 85–5060.**

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 4, 1985.

Decided Feb. 4, 1986.

E. Reynold Davies, Jr., Nashville, Tenn., and Myers N. Fisher, argued, Asst. Gen.

Counsel, F.D.I.C., Washington, D.C., for defendant-appellant.

J. Thomas Jones, argued, Bernstein, Susano & Stair, Knoxville, Tenn., for defendant-appellee.

Walter L. Price, argued, Johnson City, Tenn., for plaintiff-appellee.

Before LIVELY, Chief Judge, and MARTIN and JONES, Circuit Judges.

LIVELY, Circuit Judge.

The question for decision is whether a bank that has issued subordinated debentures may create priority for the debenture holders over depositors and other creditors of the bank by establishing a sinking fund to provide for redemption of the debentures. Construing a Tennessee statute which authorizes banks to raise capital by issuing capital notes and debentures, the district court held that the debenture holders, rather than the depositors and general creditors of the now-insolvent issuing bank, were entitled to the assets constituting the sinking fund. We conclude that the district court erred in its construction of the statute, and reverse.

### I.

#### A.

At a meeting on January 14, 1969 the shareholders of First Peoples Bank of Washington County, Tennessee (First Peoples or the bank) authorized the bank to issue $700,000 in convertible debentures maturing not more than 15 years after the date of issue. The shareholder who made the motion explained that debentures were "the best method of raising the operating capital of the Bank." The debenture holders were to be given the option at maturity to receive either cash or stock in the bank at $50 per share. The board of directors of First Peoples formally authorized the debenture issue on April 8, 1969 in a resolution which contained the following provisions:

BE IT FURTHER RESOLVED: That following the sale of the debentures there shall be accumulated in a "Sinking Fund" on deposit in the First Peoples Bank in the name of the President as Trustee for the debenture-holders, and to be deposited without interest, the sum of $46,666.67 per annum, which sum when accumulated to the amount of $700,-000.00 or any portion that is accumulated at the time of payment of the debentures, shall be issued to pay off such debentures as may demand cash at the maturity of the notes or when the notes are called.

BE IT FURTHER RESOLVED: That at the date of the payment of the debenture[s] there shall be issued an additional fourteen thousand (14,000) shares as a stock dividend to the then existing stockholders of the First Peoples Bank; and if any debenture-holder shall take his debentures in stock, then the $700,000.00 originally borrowed and such cash as is not required to pay debenture-holders will be placed in the capital structure of the First Peoples Bank.

On advice of its accountants the bank in 1971 created a segregated account in its trust department to which it transferred the current balance in the sinking fund. Thereafter the sinking fund was administered by the trust department rather than the president of the bank. Additional deposits were made annually.

Certificates issued to purchasers of the debentures provided:

The indebtedness evidence [sic] by the debentures is, to the extent and in the manner provided in the indenture, subordinate and subject in right of payment to the prior payment in full of all Senior Debt (as defined in the indenture) of the Company, whether outstanding at the date of the indenture or thereafter incurred. Each holder of this debenture, by his acceptance hereof, agrees to and shall be bound by all the provisions of the indenture relating to such subordination.

The statements of the bank's condition contained in the annual reports to shareholders contained notes which consistently re-

ferred to the 1969 issue as "unsecured convertible debentures."

### B.

On July 29, 1983 the Tennessee Commissioner of Financial Institutions declared First Peoples Bank insolvent and closed it. The Federal Deposit Insurance Corporation (FDIC) was appointed receiver and took possession of the bank's assets. FDIC then entered into a "purchase and assumption agreement" with the plaintiff, First American National Bank-Eastern (First American). The agreement provided that First American would assume First Peoples' trust obligations, but excepted liability on the debenture sinking fund trust. However, the assets purchased by First American included a balance of $672,779 in the sinking fund. FDIC claimed these funds in its corporate capacity as assignee of the receiver and as subrogee to the rights of First Peoples' former depositors.

When liquidation of First Peoples was complete, First American, as successor trustee of the sinking fund, brought this action for a declaratory judgment and direction by the court as to payment and distribution of the sinking fund assets. First American requested the district court to hold that these funds, after payment of costs and fees in the declaratory judgment proceedings, should be paid to the debenture holders in proportion to the face value of the debentures held by each.

### C.

The district court recognized that "[d]ebentures issued by a bank are ordinarily unsecured indebtedness of the bank and are subordinate to the claims of general creditors." *First American National Bank v. Federal Deposit Insurance Corp.*, 600 F.Supp. 383, 387 (E.D.Tenn.1984). However, relying upon a single sentence in the Tennessee statute which authorizes banks to increase their capital by issuing debentures, and the action of First Peoples' directors in establishing a sinking fund and segregating its assets, the district court held that after payment of reasonable fees

to First American's attorneys and costs of the action "the debenture holders are entitled to recover their *pro rata* share of the remaining fund." *Id.* at 389. The "remaining fund" did not include the last payment by First Peoples into the sinking fund, made at a time when the bank's capital was impaired. The court directed that this amount and certain accruals of interest be paid to FDIC. The district court also awarded attorney fees to counsel for First American. FDIC appealed the declaratory judgment and the award of fees. First American did not cross-appeal.

### II.

Our task is one of statutory construction. Title 45 of Tennessee Code Annotated (T.C.A.) contains a comprehensive banking code in chapters 1 and 2, entitled "Tennessee Banking Act." Included in the Act is T.C.A. § 45-2-208:

**Capital notes and debentures.**—(a) Any bank after obtaining the prior approval of the shareholders owning two-thirds (⅔) of the stock of the bank entitled to vote and after obtaining the prior approval of the commissioner, may issue and sell its convertible or nonconvertible capital notes or debentures. Capital notes or debentures which are by their terms convertible into stock may be converted into shares of common or preferred stock in accordance with such provisions therefor as may be made in such capital notes or debentures with the approval of the commissioner.

(b) Capital notes and debentures issued by banks shall be unsecured indebtedness of the bank and shall be subordinate to the claims of all depositors and of all other creditors of the bank, regardless of whether the claims of such depositors arose before or after the issuance of such capital notes or debentures. In order to secure the payment of any such capital notes or debentures, however, provisions for sinking funds may be made. In the event of liquidation, all depositors and all other creditors of the bank shall be entitled to be paid in full

before payment shall be made on account of principal or interest on such capital notes or debentures. No payment shall be made at any time on account of the principal thereof unless following such payment the aggregate of the capital, surplus and undivided profits and capital notes or debentures thereafter outstanding shall be at least equal to such aggregate immediately before the original issuance of such capital notes or debentures, or as may otherwise be expressly authorized by the commissioner. The claims of holders of capital notes or debentures shall, however, be superior to the claims of stockholders for dividends or other claims on account of shares of capital stock held by them.

(c) The amount of outstanding capital notes and debentures issued and outstanding by any bank shall be, subject to the approval of the commissioner, treated as capital for the purpose of computing the loan limits prescribed by § 45–2–1102(a) and for the purpose of computing investment limits prescribed by 45–2–607(a)(9).

The district court relied on the second sentence of T.C.A. § 45–2–208(b): "In order to secure the payment of any such capital notes or debentures, however, provisions for sinking funds may be made." The district court stated that it assumed the legislature "used each word purposefully so that no statutory expression becomes superfluous or without meaning. So construed, ... T.C.A. § 45–2–208 must be read to provide that debentures [sic] holders may become secured through provisions for sinking funds." 600 F.Supp. at 388.

FDIC pointed to the fourth sentence in T.C.A. § 45–2–208(b) as prohibiting distributions to the debenture holders after First Peoples became insolvent. That sentence states, "No payment shall be made at any time on account of the principal thereof unless following such payment the aggregate of the capital, surplus and undivided profits and capital notes or debentures thereafter outstanding shall be at least equal to such aggregate immediately before the original issuance of such capital

notes or debentures...." FDIC argued that the debentures could not have been paid if they had matured in 1983 because First People's capital was impaired. The district court construed the fourth sentence "to prohibit payment *into* the principal account of a sinking fund while the capital of the bank is impaired, *not payment out of* the principal to the debenture holders while the capital of the bank is impaired." 600 F.Supp. at 388 (emphasis added). This was the basis of its order to pay the last deposit to FDIC rather than the debenture holders.

### III.

#### A.

The district court relied on only one rule of statutory construction. As stated by this court, that rule requires that "[u]nder Tennessee law a court should construe a statute so that no part will be inoperative, superfluous, void or insignificant and that one section will not destroy another." *Owen of Georgia, Inc. v. Shelby County*, 648 F.2d 1084, 1091 (6th Cir.1981). The district court overlooked a more fundamental rule of statutory construction. The Supreme Court of Tennessee stated in *Tidwell v. Collins*, 522 S.W.2d 674, 676 (Tenn. 1975), "The premier rule of statutory construction is to ascertain and give effect to the legislative intent.... In doing this we look to the general purpose to be accomplished." (Citations omitted). This "premier rule" was expounded by the Supreme Court of the United States in *Helvering v. New York Trust Co.*, 292 U.S. 455, 464, 54 S.Ct. 806, 808, 78 L.Ed. 1361 (1934):

The rule that where the statute contains no ambiguity, it must be taken literally and given effect according to its language is a sound one not to be put aside to avoid hardships that may sometimes result from giving effect to the legislative purpose. *Commissioner of Immigration v. Gottlieb*, 265 U.S. 310, 313 [44 S.Ct. 528, 529, 68 L.Ed. 1031]. *Bate Refrigerating Co. v. Sulzberger*, 157 U.S. 1, 37 [15 S.Ct. 508, 516, 39 L.Ed. 601]. But the expounding of a statutory

provision strictly according to the letter without regard to other parts of the Act and legislative history would often defeat the object intended to be accomplished. Speaking through Chief Justice Taney in *Brown v. Duchesne,* 19 How. 183, this court said (p. 194): "It is well settled that, in interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute (or statutes on the same subject) and the objects and policy of the law, as indicated by its various provisions, and give to it such a construction as will carry into execution the will of the Legislature, as thus ascertained, according to its true intent and meaning."

### B.

The purpose of the Tennessee Banking Act is set forth in T.C.A. § 45–1–102(a):

It is the underlying purpose of chapters 1 and 2 of this title to provide the citizens of Tennessee with a sound system of state chartered banks by providing for and encouraging the development of such banks while restricting their activities to the extent necessary to safeguard the interests of depositors.

The district court's construction of T.C.A. § 45–2–208(b) does not further this underlying purpose. That reading gives those who contribute to the capital of a bank priority over depositors rather than restricting the activities of banks as necessary to safeguard the interests of depositors. The underlying purpose is served, however, by giving effect to the sentences that bracket the second sentence. The district court virtually ignored the bracketing language. The first sentence states that all debentures "shall be unsecured indebtedness of the bank and shall be subordinate to the claims of all depositors and of all other creditors of the bank...." The third sentence provides, "In the event of liquidation, all depositors and all other creditors of the bank shall be entitled to be paid in full before payment shall be made

on account of principal or interest on such capital notes or debentures."

It is hard to imagine how the legislature could have made it more clear that debentures are both unsecured and subordinated in payment to the claims of depositors and other creditors. These conditions are consistent with the purpose of safeguarding the interest of depositors. It is true that the second sentence, read literally and given its technical meaning, contradicts the clear meaning of the first and third sentences. Generally, when a debtor makes payments into a sinking fund under a bond mortgage, title passes from the debtor to the trustee who holds the fund for the benefit of the bondholders. *Warder v. Brady,* 115 F.2d 89, 96 (4th Cir.1940). And ordinarily, once deposits are made into a sinking fund, they cannot be withdrawn. *LaSalle Hotel Realty Co. v. Taft,* 85 F.2d 339, 341 (7th Cir.1936).

We reconcile the apparently conflicting provisions of T.C.A. § 45–2–208(b) by reading the entire subsection in such a way as to further the intent of the legislature. To give it meaning without doing violence to the intent of the legislature, the second sentence must be read merely to permit the establishment of a fund *to provide for* the redemption of the debentures at maturity rather than a true sinking fund. Under this construction, if the debentures had matured while the bank was still solvent, there would have been a ready source for payment to those debenture holders who elected to receive cash rather than stock, but the fund would be treated the same as any other asset in the event of liquidation. This construction is consistent with the requirement of the third sentence, which comes into play when there is a liquidation. The district court's construction would nullify the third sentence completely.

### IV.

The construction we have given T.C.A. § 45–2–208(b) does not render the second sentence "inoperative, superfluous, void or insignificant"; neither does it permit one sentence—the second—to "destroy anoth-

er"—the third. Thus, it follows both facets of the rule propounded in *Owen of Georgia, Inc. v. Shelby County*, 648 F.2d at 1091. Unlike the district court, we have not looked "merely to a particular clause in which general words may be used," *Helvering v. New York Trust Co.*, 292 U.S. at 464, 54 S.Ct. at 808, but have read the second sentence in harmony with the entire section of which it is a part and with the underlying purpose of the Banking Act. This is necessary in order to carry out what we perceive as the clear legislative will. It is not possible to give every word used in a statute its precise technical meaning. We recognized this fact in *Wirtz v. Allen Green & Associates, Inc.*, 379 F.2d 198, 200 (6th Cir.1967), where Judge Weick wrote for the court:

> An examination of the many cases dealing with statutory construction reveals that legislatures do not always use apt words to express their intent. The Court will look to the legislative purpose of the Act and follow that purpose even though a literal reading of the language used would suggest a different conclusion.

(Citations omitted).

Every debenture holder in this case had clear notice from the conditions printed on the debenture certificates that "in right of payment" the debentures were subordinate. The certificates made no reference to the sinking fund or security. The public was advised consistently in First Peoples' statements of condition that the debentures were unsecured. To make an after-the-fact determination that the debentures were secured and entitled to priority in payment over claims of depositors and other creditors would deprive those persons of a liquidation position they had every right to expect and would provide the debenture holders with an unexpected and undeserved windfall.

We are not unmindful of the rule that the court of appeals ordinarily will defer to the view of a district judge on questions of unsettled local law. *Louisville & Jefferson County Metropolitan Sewer District v. Travelers Insurance Co.*, 753 F.2d 533, 540 (6th Cir.1985). Nevertheless, an appellant is entitled to the same review of a district court's decision interpreting local law as of any other legal question. *Roberts v. Berry*, 541 F.2d 607, 609 (6th Cir. 1976). Where the application of settled rules of statutory construction leads us to the firm conviction that the interpretation given a statute by a district court is erroneous, it is our duty to reverse.

The judgment in No. 85–5060 allowing a fee to counsel for First American National Bank is affirmed. The judgment in No. 84–6123, determining that the debenture holders are entitled to pro rata distribution of the remaining assets in the sinking fund, is reversed with directions to enter judgment providing for the distribution of those assets to FDIC.