CENTRAL NATIONAL BANK OF
WACO, TEXAS,
Plaintiff–Appellant,

v.

FEDERAL DEPOSIT INSURANCE COR-
PORATION, As Receiver for First Re-
publicBank Waco, N.A., et al., Defen-
dants–Appellees.

No. 90–8147
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Sept. 10, 1990.

David B. Kultgen, Pat Beard, Beard &
Kultgen, Waco, Tex., for plaintiff-appel-
lant.

Robert G. Clark, Sr. Atty., Jody Kresch–
Silverman, FDIC, Washington, D.C., Peter
F. Lovato, III, Mary Ellen Stumpf, Hop-
kins, Sutter & Clark, Dallas, Tex., for
FDIC.

Before POLITZ, DAVIS, and
BARKSDALE, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Central National Bank of Waco, Texas
(Central), sued the Federal Deposit Insur-
ance Corporation (FDIC) for payment of a
subordinated debenture. The district court
dismissed Central's suit. We affirm.

I.

Plaintiff, Central National Bank held a
subordinated debenture issued by The Citi-
zens National Bank (Citizens) in 1964.
First RepublicBank Waco (First Republic
Waco) succeeded to the assets and liabili-
ties of Citizens, and thus became the obli-
gor for payment of the debenture. First
Republic Waco was a subsidiary of the
bank holding company, First RepublicBank
Corporation (FRBC). The principal amount
of $200,000, plus accrued interest, was due
on the debenture on April 1, 1989.

The debenture provides that should the
issuing bank become insolvent, or any re-
ceiver or governmental authority be ap-
pointed for or take possession of the bank's
assets or business, or the bank cease opera-
tions, then the debenture's principal and
accrued interest becomes due and payable
upon demand. In such a case, payment on
the debenture is subordinated to and inferi-
or in right of payment to "all other indebt-
edness" of First Republic Waco.

In early 1988, several of FRBC's subsidi-
aries suffered financial problems that
threatened FRBC's ability to continue its
operations. FRBC sought help from the
Federal Deposit Insurance Corporation
(FDIC). On March 16, 1988, the FDIC's
Board of Directors authorized a loan of $1
billion to FRBC, FRBC subsidiaries (includ-
ing First Republic Waco), and others. In a
March 17, 1988, news release announcing
the billion dollar advance to FRBC subsidi-
aries, the FDIC included the following
statement:

these issues should be resolved by a fact-finder on the merits and not on summary judgment.

The combinations of FDIC assistance and liquidity support by the Federal Reserve will provide needed stability to First Republic's banking institutions and their depositors. In any arrangements that may be necessary to achieve a long-term solution to First Republic's problems, *the FDIC assures that all depositors and other general creditors of First Republic's banks will be fully protected and service to the banks' customers will not be interrupted.* (emphasis added).

In connection with the loan, the FDIC entered a note purchase agreement with FRBC and its subsidiaries. Under this agreement, FRBC pledged the stock of the banks in which it had a direct interest and guaranteed payment of the loan. First Republic Waco and other FRBC subsidiaries also guaranteed a portion of the loan in an amount not to exceed the lesser of ninety-five percent of its primary capital or ninety-five percent of its adjusted net worth.

In July of 1988, the office of the Comptroller of the Currency declared First Republic Waco insolvent and appointed the FDIC as its receiver. The FDIC subsequently entered into a purchase and assumption transaction with a newly established "bridge bank" that ultimately became NCNB Texas National Bank. Central's debenture was not one of the liabilities assumed by NCNB Texas National.

In January of 1989, Central made a formal demand on the FDIC for payment of the debenture. The FDIC denied liability, and Central filed a complaint in district court seeking payment of principal and interest on the debenture together with collection costs, court costs, and attorney fees.

In April of 1989, the FDIC moved to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Following Central's brief in opposition to the motion, the FDIC's reply and Central's further response, the district court granted the FDIC's motion on February 27, 1990. Relying, inter alia, on the

documents attached to the FDIC's motion to dismiss, the district court concluded that Central was not a "general creditor" within the meaning of the FDIC's press release. It also found that Central was neither an intended third-party beneficiary of the note purchase agreement nor a direct or third party beneficiary of the public assurance made in the press release. Central timely appealed.

## II.

If, as in this case, the district court considers matters outside the pleadings, Rule 12(b) requires the court to treat the motion to dismiss as a motion for summary judgment and to dispose of it as required by Fed.R.Civ.P. 56.[1] We review a motion for summary judgment de novo; summary judgment was proper if the pleadings, affidavits and other evidence create no genuine issue of material fact.

Central first argues on appeal that the FDIC assumed this debt obligation through its March 17th public assurance. Central asserts that it was a "general creditor" within the press release's meaning. Central further asserts that the FDIC used the term "general creditors" in "newspaper vernacular," to include all of the FRBC subsidiaries' creditors. Finally, Central argues that for the FDIC's press release to be effective at stemming a bank run, the FDIC must have intended "general creditor" to encompass "everyone to whom the First Republic group owed money."

The district court correctly rejected this argument. Courts have consistently treated subordinated debenture holders within the banking industry as a separate and inferior class of creditors from "general creditors." See, e.g., *First Am. Nat'l Bank–Eastern v. FDIC*, 600 F.Supp. 383, 387 (E.D. Tenn.1984) ("Debentures issued by a bank are ordinarily unsecured indebtedness of the bank and are subordinate to the claims of general creditors."), quoted with approval in *First Am. Nat'l Bank–*

---

**1.** Central had ample opportunity to respond to the documents the FDIC filed; Central does not complain of the district court's conversion of FDIC's 12(b)(6) motion to one for summary judgment.

*Eastern v. FDIC*, 782 F.2d 633, 635 (6th Cir.1986); see also *FDIC v. Bank of Am.*, 701 F.2d 831, 835–36 (9th Cir.), cert. denied, 464 U.S. 935, 104 S.Ct. 343, 78 L.Ed.2d 310 (1983); *Adams v. Resolution Trust Corp.*, 731 F.Supp. 352, 355–57 (D. Minn.1990). In fact, the FDIC regulations treat such debentures more like an equity interest than debt and allow them to be used to meet regulatory capital requirements. See 12 C.F.R. §§ 3.2, 325.2 (defining subordinated notes and debentures as "secondary capital"). The FDIC's letter to FRBC of March 29, 1988, makes its intention clear in this respect: "The express intent of this determination was to assure ... all general creditors of the banks that valid and enforceable obligations of the banks will be fully honored.... This FDIC assurance does not extend ... to subordinated liabilities...."

Central's second argument on appeal is that the FDIC is contractually liable for Federal Republic Waco's debt on Central's subordinated debenture. Central acknowledges that it was not a party to the note purchase agreement and that the agreement explicitly disclaims any intent to create rights in any person not a party thereto. Nevertheless, Central argues that it was a third-party beneficiary of the agreement because First Republic Waco received no consideration in exchange for its loan guaranty other than the FDIC's promise to protect depositors and general creditors. According to Central, the FDIC's press release demonstrated its intention to protect depositors and general creditors. Even if Central's characterization of the note purchase agreement and the press release is correct, however, Central does not qualify as a third-party beneficiary because it is not a general creditor within the meaning of the FDIC's press release.

Because Central was not a general creditor under the FDIC's press release, summary judgment for the FDIC was proper.

AFFIRMED.