63 F.3d 900
 95 Cal. Daily Op. Serv. 6599, 95 Daily Journal
D.A.R. 11,337
SECURITY PACIFIC NATIONAL BANK, as Trustee, Plaintiff-Appellee,
v.
The RESOLUTION TRUST CORPORATION, as Receiver of Santa
Barbara Federal Savings and Loan Association,
Defendant-Appellant.
 No. 92-55965.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 4, 1994.
Decided Aug. 22, 1995.
 
 Kevin M. Crotty (argued), and Dennis S. Klein (on the briefs), Hughes Hubbard & Reed, Washington, DC, for defendant-appellant.
 Charles H. MacNab, Jr., Sheppard, Mullin, Richter & Hampton, San Francisco, CA, for plaintiff-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before: BROWNING, BEEZER* and KLEINFELD, Circuit Judges.
 KLEINFELD, Circuit Judge:
 
 
 1
 The issue is priority of subordinated debenture holders after a bank failure. When a bank fails, and the Resolution Trust Corporation (RTC) repudiates the bank's subordinated debentures, do subordinated debenture holders get the same priority as holders of other debt? No. Their interest remains subordinated.
 
 
 2
 I. Facts.
 
 
 3
 No facts were disputed. The district court granted summary judgment in favor of the holders of the subordinated debentures. We reverse, and remand for entry of summary judgment in favor of the RTC.
 
 
 4
 Debentures are ordinarily unsecured obligations of a corporation. They typically differ from promissory notes, in that they are issued pursuant to a trust indenture. The trustee acts as an agent for the debenture holders, to supervise the debtor's compliance with its covenants in the debentures, and to collect the debt when due. This trust indenture scheme makes it practical to issue debentures for many millions of dollars, to many investors. The investors do not have to supervise compliance or collect the money when due, and the corporation does not have to deal with large numbers of investors. See Henry Winthrop Ballantine, Ballantine on Corporations 494-497 (rev. ed. 1946).
 
 
 5
 Subordination is a device by which lawyers enhance productive capacity through ideas and words. Ordinarily if a debtor borrows money, then its ability to borrow more money from others is reduced. Other things being equal, only so much debt can be piled on a debtor's back, and more would be unsound for both debtor and creditor. But if debt is subordinated, then it may enhance the creditworthiness of the debtor instead of reducing it. To the holder of the senior debt, the subordinated debt functions as capital, enhancing the productive capacity of the borrowing firm without encumbering its assets in competition with the senior creditor. The subordinated creditor may have an equity interest in the firm independent of the debenture, or may be getting a high yield on the debenture. If the company succeeds, the debenture holder gets the higher interest likely to have agreed upon as compensation for subordination, and if it fails, at least he gets his share ahead of the stockholders.
 
 
 6
 In 1987, Santa Barbara Savings and Loan Association issued $25 million of 9% Convertible Subordinated Debentures due in 2012.[1] Security Pacific National Bank[2] was the trustee on behalf of the debenture holders. The purpose of the offering was to increase Santa Barbara's "regulatory capital," that is, the minimum capital required by banking regulations. New federal regulations had increased the regulatory capital requirements for savings and loan institutions like Santa Barbara S & L. Regulatory capital requirements are intended to provide a cushion to absorb losses, to reduce the burden on federal deposit insurance funds, and to ensure that depositors can get their money back. Regulatory Capital Requirements for Insured Institutions, 53 Fed.Reg. 51,800 (Dec. 23, 1988); Northwest Racquet Swim & Health Clubs, Inc. v. Resolution Trust Corporation, 927 F.2d 355, 360 (8th Cir.), cert. denied, 502 U.S. 815, 112 S.Ct. 66, 116 L.Ed.2d 41 (1991).
 
 
 7
 The banking regulations allow institutions to use proceeds from the sale of subordinated debentures to meet regulatory capital requirements, provided that the debentures meet certain requirements. These requirements are intended to ensure that the subordinated debentures are really subordinated, like capital rather than ordinary debt, in order to protect creditors and depositors. After all, if the holders of subordinated debentures could share equally with the RTC and depositors the meat from the carcass of a failed bank, then the money loaned to the bank by the debenture holders would not enhance the security of the depositors and the government. The certificate evidencing the subordinated debt must "[c]learly state that the security ... is subordinated on liquidation, as to principal, interest, and premium, if any, to all claims (including post-default interest) against the institution having the same priority as savings account holders or any higher priority." 12 C.F.R. Sec. 563.81(d)(1)(ii). Santa Barbara's Subordinated Debentures met this requirement. The indenture provided:
 
 
 8
 The indebtedness evidenced by the Securities shall be subordinate and junior in right of payment to all Senior Indebtedness in that in case of (a) any insolvency, receivership, conservatorship, reorganization, readjustment of debt, marshalling of assets and liabilities or similar proceedings or any liquidation relating to or winding up of the Association or the Holding Company, each as a whole, whether voluntary or involuntary or (b) the maturity of Senior Indebtedness by lapse of time, acceleration or otherwise (each a "Specified Event " and collectively the "Specified Events "), all such Senior Indebtedness shall be entitled to be paid in full before any payment shall be made on account of the principal of, premium, if any, or interest on the Securities.
 
 
 9
 The investors in the debentures subordinated their claims to those of the senior creditors, as they had to in order for the debentures to function as regulatory capital.
 
 
 10
 The Office of Thrift Supervision appointed the Resolution Trust Corporation as Conservator of Santa Barbara Savings and Loan in 1990 upon finding that Santa Barbara had insufficient capital. Shortly thereafter the RTC was appointed receiver, to liquidate the failed S & L.
 
 
 11
 The RTC repudiated the subordinated debentures. It has the power to repudiate under 12 U.S.C. Sec. 1821(e)(1). Security Pacific filed a complaint in federal district court seeking damages for the RTC's repudiation, pursuant to 12 U.S.C. Sec. 1821(e)(3). Neither the RTC's right to repudiate nor Security Pacific's right as trustee for the debenture holders to damages is at issue.
 
 
 12
 The sole issue on appeal is priority of the debenture holders claims relative to those of other creditors. Security Pacific sought a declaratory judgment that its claims were entitled to level six priority. That would allow the subordinated debenture holders to share on an equal footing with general creditors, including the RTC as subrogee of the failed S & L's depositors. The RTC argued that Security Pacific's claims were entitled to level nine priority. That would let the general creditors and the RTC fully satisfy their claims before any remaining money went to the debenture holders.
 
 
 13
 The parties agreed to a stipulated set of facts. Both sides moved for summary judgment. The district court granted summary judgment in favor of Security Pacific, holding that under 12 C.F.R. Sec. 389.11 (1990), Security Pacific's claim was entitled to level six priority. The RTC appealed. We review de novo, Kruso v. Int'l Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990), and we reverse, because we construe the regulation differently.
 
 
 14
 II. Analysis.
 
 Here is the regulation we must construe:
 
 15
 (a) Unsecured claims against an association or the receiver that are proved to the satisfaction of the receiver shall have priority in the following order:
 
 
 16
 (1) Administrative expenses of the receiver....
 
 
 17
 (2) Administrative expenses of the association....
 
 
 18
 (3) Claims for wages and salaries....
 
 
 19
 (4) [Certain additional] claims for wages and salaries....
 
 
 20
 (5) Claims of governmental units for unpaid taxes, other than Federal income taxes....
 
 
 21
 (6) Claims for withdrawable accounts, including those of the Corporation as subrogee or transferee, and all other claims which have accrued and become unconditionally fixed on or before the date of default, whether liquidated or unliquidated, except as provided in paragraphs (a)(1) through (a)(5) of this section....
 
 
 22
 (7) Claims other than those that have accrued and become unconditionally fixed on or before the date of default, including claims for interest after the date of default on claims under paragraph (a)(6) of this section....
 
 
 23
 (8) Claims of the United States for unpaid Federal income taxes;
 
 
 24
 (9) Claims that have been subordinated in whole or in part to general creditor claims, which shall be given the priority specified in the written instruments that evidence such claims and;
 
 
 25
 (10) Claims by holders of non-withdrawable accounts, including stock
 
 
 26
 ....
 
 
 27
 ....
 
 
 28
 (c) If the rejection or repudiation of an unexpired lease or executory contract by the receiver gives rise to a claim for damages, such claims, if allowed, shall be classified as a claim that has accrued and become unconditionally fixed on or before the date of default, and not as an administrative expense of the receiver.
 
 
 29
 12 C.F.R. Sec. 389.11 (1990) (emphasis added).
 
 
 30
 The RTC argues that priority nine applies to subordinated debentures, not priority six. Security Pacific argues that subsection (c) operated, because of the repudiation, and that subsection (c) turns any repudiated claim into a priority six claim. The basis for Security Pacific's argument is that the language in subsection (c) for priority of repudiated claims, "shall be classified as a claim that has accrued and become unconditionally fixed on or before the date of the default," exactly parallels the language in subsection (a)(6), "all other claims which have accrued and become unconditionally fixed on or before the date of default."
 
 
 31
 One issue which we do not reach is the RTC's argument that subsection (c) has no application, because it was deleted from the regulation before the district court decided the case. Security Pacific responds that subsection (c) was in effect at the time of the repudiation, so its rights vested then, and could not be taken away by a subsequent change in the law. We assume without deciding that subsection (c) controls. We conclude that the RTC, nevertheless, prevails on the priority issue.
 
 
 32
 Security Pacific's argument, that subsection (c) raises damages claims for repudiated debt to level six, is a serious one. The language is indeed parallel, and the construction makes grammatical sense. It makes no practical sense, though, and cannot be reconciled with a grammatical and literal construction of the rest of the regulation. If we did not consider the meaning and purpose of subordinated debentures, and instead treated subordinated debentures and "claims which have accrued and become unconditionally fixed" as widgets or meaningless verbal formulas, then we could go back and forth on the statutory construction problem without a clear resolution. But when we carefully apply ordinary canons of statutory construction, in light of the purposes of the regulatory scheme and the practical significance of the exercise, we must conclude that subordinated debt stays subordinated.
 
 
 33
 Generally subordinated debt stays subordinated to the claims of general creditors upon the insolvency of the institution where the subordinated debt served as regulatory capital. See, e.g., In re Holiday Mart, Inc., 715 F.2d 430, 433 (9th Cir.1983) (per curiam); Northwest Racquet, 927 F.2d at 363; Central Nat'l Bank v. FDIC, 910 F.2d 1279, 1280-81 (5th Cir.1990); In re Weis Securities, Inc., 605 F.2d 590, 596 (2d Cir.1978), cert. denied, 439 U.S. 1128, 99 S.Ct. 1045, 59 L.Ed.2d 89 (1979). There would not be much point to subordination, or to allowing subordinated debentures to be used as regulatory capital, if this were not so. As the Eighth Circuit noted, the protection afforded by regulatory capital "would be severely undermined if, at the time when the protection was most sorely needed, claims of general creditors or depositors were made contingent upon the lower priority claims of subordinated debt and equity interests." Northwest Racquet, 927 F.2d at 361.
 
 
 34
 These cases do not control, because they do not involve repudiation, and application of subsection (c). The question in this case is whether subsection (c) changes the priorities to the advantage of subordinated debt.
 
 
 35
 We cannot ignore subsection (c). If subsection (c) is not meant to elevate all repudiated debt to level six priority, what other function could it perform? We must avoid a construction which renders any language of the enactment superfluous. In re Burns, 974 F.2d 1064, 1066 (9th Cir.1992). The RTC argues the last clause of subsection (c) manifests its purpose. That clause says "and not as an administrative expense of the receiver." Under this construction, subsection (c) would bar an argument that repudiated debt rose to level one priority, but would not elevate claims that are level seven through ten to level six. We need not decide whether subsection (c) is so narrowly confined. Even assuming that repudiated claims generally get level six priority under subsection (c), that would not be so where a more specific subsection, such as eight, nine, or ten, provides for a different priority. Generally a more specific provision of an enactment prevails, in the sense of making an exception to, a more general provision. See 2A Norman J. Singer, Sutherland Statutory Construction Sec. 47.17 (5th ed. 1992) ("If the general words are given their full and natural meaning, they would include objects designated by the specific words, making the latter superfluous."). See also International Ass'n of Machinists & Aerospace Workers v. The Boeing Co., 833 F.2d 165, 169 (9th Cir.1987), cert. denied, 485 U.S. 1014, 108 S.Ct. 1488, 99 L.Ed.2d 715 (1988); Karrell v. U.S., 181 F.2d 981 (9th Cir.1950), cert. denied, 340 U.S. 891, 71 S.Ct. 206, 95 L.Ed. 646 (1950).
 
 
 36
 If we apply Security Pacific's interpretation of subsection (c) to the parallel language of subsection (a)(6), levels eight, nine, and ten are rendered superfluous. The reason is that it is implicit in Security Pacific's argument that if a claim falls within the language of level six and also a lower level, then level six must control. Such a construction must fail because all claims which do not fall within level six by logical necessity would fall within the equally general language of level seven, which encompasses "[c]laims other than those that have accrued and become unconditionally fixed on or before the date of default." 12 C.F.R. Sec. 389.11(a)(7) (1990). Because all claims, including lower priority claims, necessarily accrue at some point--either on or before the date of default, or at some later time--Security Pacific's interpretation of subsection (c) would render the more specific provisions of levels eight, nine, and ten meaningless. We must avoid a construction which fails to give effect to every subsection of the enactment. Burns, 974 F.2d at 1066; 2A Sutherland Statutory Construction Sec. 46.05. Suppose, hypothetically, there is a federal income tax claim, which the regulation designates as level eight. Either it accrued and becomes unconditionally fixed on or before the date of default, so it would have level six priority, or it did not, so it would have level seven priority. But that cannot be right, because level eight would then have no practical meaning.
 
 
 37
 Security Pacific maintains that the administrative history of 12 C.F.R. Sec. 389.11 (1990) demonstrates that its interpretation is the correct one. Like so many trips through legislative history, we complete it with no more than we had when we started it. There is nothing to which the parties have directed our attention which speaks to the question at issue, just reformulations of the language in the regulation in the course of discussion of other issues. The administrative history does not address the applicability of 12 C.F.R. Sec. 389.11 (1990) to claims based on subordinated debt.
 
 
 38
 Security Pacific tries to make sense of why repudiation would elevate its level nine claim to level six, by arguing that when RTC repudiated the debentures, it necessarily repudiated the subordination clauses of the debentures. Security Pacific cites In re TransAmerican Natural Gas Corp., 79 B.R. 663 (Bankr.S.D.Tex.1987), and In re EI International, 123 B.R. 64 (Bankr.D.Idaho 1991) for the proposition that a receiver's repudiation of an executory contract repudiates all provisions of the contract. We do not see why that should be so in this context. The debenture is a promise running from the failed bank to the investors. The subordination is a covenant running from the investors to depositors and the government. The subordination is intended to benefit the government and the depositors in the event that the S & L cannot pay all its debts. Why should a covenant from A to B and C drop out when C steps into A's shoes and repudiates A's debt to D? Subordination does not matter much if the S & L pays its debts. It matters a great deal if the S & L defaults on its obligations, and not enough money is left to pay all the creditors. It would make no sense to treat repudiation of the failed S & L's debt as though it nullified a subordination agreement designed to protect the government and the depositors in that precise eventuality.
 
 
 39
 The most persuasive argument by the RTC, the one which persuades us that its construction is correct, is that the purpose of subordination and the purpose of repudiation would be defeated if the debenture holders were jumped up to level six priority. If that were so, then the debentures would reduce the capital available for depositors and the government, instead of increasing it. They would not have performed the purpose of regulatory capital. Regulatory capital requirements exist to reduce this taxpayer burden. See, e.g., Northwest Racquet, 927 F.2d at 361; 53 Fed.Reg. at 51,801 (Dec. 23, 1988) ("the most important purpose [of regulatory capital] is protection of ... the insurer of the accounts of the insured institution").
 
 
 40
 III. Conclusion.
 
 
 41
 The regulation is not just an arbitrary set of words, in which we plug and unplug dictionary definitions and identically worded subsections. It is a law designed to accomplish a purpose. We must examine the meaning of an enactment to see whether one construction makes more sense than another as a means of attributing a rational purpose to the enacting authority. Longview Fibre Co. v. Rasmussen, 980 F.2d 1307, 1311 (9th Cir.1992). The purpose of subsection (a), designating the priority level nine for subordinated debt, together with the subordination clause in the debentures and the regulations controlling the use of these debt instruments as regulatory capital, was to enlarge the borrowing ability of the S & L by subordinating the debenture holders to the depositors and the government as their insurer. This purpose requires that level nine control the priority of the debentures, and that subsection (c) not be read as jumping repudiated subordinated debentures up to level six.
 
 
 42
 REVERSED.
 
 
 
 *
 The Honorable Harold M. Fong, United States District Judge for the District of Hawaii, participated in oral argument. Judge Fong died on April 20, 1995. Pursuant to Ninth Circuit General Order 9.2.g, The Honorable Robert R. Beezer was drawn to replace Judge Fong on the panel. Judge Beezer has read the briefs, reviewed the excerpts of record and listened to a recording of oral argument held on February 4, 1994
 
 
 [1]
 Most of the debentures were exchanged for common stock in 1990, but $8.4 million of the debentures remained outstanding when the bank failed
 
 
 [2]
 Security Pacific was taken over by Bank of America, but this change has no effect on the case. We refer to the appellee as Security Pacific for purposes of simplicity