**In re TAX REFUND LITIGATION.**

**No. MDL 731.**

United States District Court,
E.D. New York.

Nov. 2, 1988.

Kostelanetz Ritholz Tigue & Fink, New York City by Jules Ritholz, Edward Kesselman, David J. Cohen, for plaintiff Irving Cohen.

Caplin & Drysdale, Chartered, Washington, D.C. by Scott D. Michel, for plaintiffs Barrister Associates, Parliament Securities Corporation, Paul F. Belloff and Robert Gold.

U.S. Dept. of Justice, Office of Special Litigation, Washington, D.C. by John B. Consevage, Trial Atty., Tax Div., and Andrew J. Maloney, U.S. Atty., E.D.N.Y., Brooklyn, N.Y. by Pamela R. Perron, Asst. U.S. Atty., for I.R.S.

## MEMORANDUM AND ORDER

PLATT, Chief Judge.

This is an action for a refund of money paid to the Internal Revenue Service (the "Service") as a civil penalty pursuant to 26 U.S.C. § 6700 (1982) ("section 6700") which provides for the imposition of a penalty on those who promote "abusive tax shelters."

The plaintiff, Irving Cohen, is an officer of several corporations that allegedly engaged in activities violative of the statute. The penalties relate to literary properties leased to a series of limited partnerships that were then sold by Barrister Associates. The tax credit was passed through to Barrister Associates.

## CALCULATION OF THE PENALTY

The Service assessed a penalty against plaintiff for the years 1982 and 1983. The penalty was in the amount of $3,687,000 ($1,000 × 3,687 sales). Plaintiff paid the requisite 15% of the penalty assessed and filed a claim for a refund. He subsequently commenced this action for a refund bringing this motion for partial summary judgment in which he is joined by Barrister Associates, Parliament Securities Corporation, Paul F. Belloff and Robert Gold (the "Barrister Plaintiffs").[1] Plaintiff claims that he is entitled to a partial refund because the Service's assessment exceeds the amount required under the statute. Plaintiff contends that the proper penalty amount is $3,214,061 which reflects 10% of the gross income he derived from all sales because 10% of his gross income was greater than $1,000. The Service claims that its calculation of the penalty is reasonable and should be accorded deference.

The Service claims that each election of a literary property was a separate "activity" within the meaning of the statute. Therefore, it argues that application of the $1,000 penalty to each of the 3,687 elections is in accordance with the statutory mandate. In support of its $3,687,000 penalty calculation, it points out that since that sum is greater than 10% of the gross income derived from each election, it is the appropriate penalty assessment.

Plaintiff, however, claims that this transactional or "each sale" method of assessment is improper. He argues that the $1,000 amount is only appropriate when 10% of the gross income derived from *all* sales (not each sale), is less than $1,000. It is a minimum amount to insure that the

penalty reflects a sufficient amount to deter the promotion of abusive tax shelters.

The issue is whether the Service's transactional or "each sale" method of assessment or the taxpayer's 10% of gross income from all sales method of assessment is correct. This controversy has surfaced in a number of district courts. Unfortunately, the decisions reflect different interpretations. Some courts have accepted the Service's interpretation, while others have accepted the taxpayer's.

### I. *The Language of the Statute Sustains Plaintiff's Position*

Based upon an examination of the plain language of the statute, the impracticality of the Service's interpretation and the legislative history, plaintiff's interpretation of the penalty provision of section 6700 appears to be the correct interpretation. In addition, those cases which examine the statute and its history support this conclusion.

Title 26 U.S.C. § 6700 (1982) provides:
(a) Imposition of penalty.—Any person who—

(1)(A) organizes (or assists in the organization of)—

(i) a partnership or other entity,

(ii) any investment plan or arrangement, or

(iii) any other plan or arrangement, or

(B) participates in the sale of any interest in an entity or plan or arrangement referred to in subparagraph (A), and

(2) makes or furnishes (in connection with such organization or sale)—

(A) a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit by reason of holding an interest in the entity or participating in the plan or arrangement which the person knows or has reason to know is false or fraudulent as to any material matter, or

---

**1.** The penalty was assessed against the Barrister Plaintiffs in the same manner as it was assessed against Plaintiff Cohen. Therefore, the discussion though focused on the facts relating to Plaintiff Cohen, applies to both the Barrister Plaintiffs and Plaintiff Cohen.

(B) a gross valuation overstatement as to any material matter,

> shall pay a penalty equal to the greater of $1,000 or 10% of the gross income derived or to be derived by such person from such activity.[2]

The position of both parties is that the plain language of the statute is in accord with their respective interpretations. However, a close reading of the statute supports the conclusion that when Congress used the word "activity," it did not intend to refer to each sale. Congress, when referring to each sale, in section (a)(2), uses the term "such organization or sale." Therefore, it is difficult to imagine why it would not have used that same term in section (a)(2)(B), as well, if it meant to apply the penalty to each sale. Furthermore, as Judge Williams noted in examining this issue:

> The use of that language ("such organization or sale") demonstrates that Congress knew how to refer to each sale if that is what it wanted to do. When Congress used the word "activity," therefore, it meant something different: not each sale but rather the salesperson's overall activity of promoting abusive tax shelters.

*Spriggs v. United States*, 660 F.Supp. 789 (E.D.Va.1987), aff'd, 850 F.2d 690 (4th Cir. 1988).[3]

In *Spriggs*, plaintiff sought redetermination of the amount of the penalty for the sale of abusive taxshelters. On the parties cross motions for summary judgment, the court concluded that the $1,000 is a minimum penalty applied when 10% of the gross income derived from the salesperson's overall sales activity for the year is less than $1,000. The Service argued that the term "activity" meant "sale" and, therefore, the $1,000 penalty applied to each sale because 10% of the income derived from *each sale* was less than $1,000. However, the court rejected this argument and held that the plaintiff taxpayer's interpretation was correct. In further support of its conclusion, the *Spriggs* court reasoned that had Congress intended to impose a penalty on each sale, it would have expressly provided for a "per sale" penalty.[4]

## II. *The Service's Interpretation is Impractical*

Although the Service argues that it should be accorded deference because it is the agency charged with administering the tax penalty, a reasonableness standard cannot be waived. The results achieved, when using the Service's method of calculation, reveal that its interpretation is impractical and unreasonable. This is so because the results are unfair and clearly not what Congress intended. In some situations a total forfeiture of income results.[5] Certainly, if Congress intended a 100% penalty, it would not have chosen a percentage penalty. Moreover, the intent of Congress was to punish those who engaged in the illegal act of promoting abusive tax shelters. It did not intend to punish the violators according to the manner in which they

---

**2.** The Tax Reform Act of 1984, Pub.L. 98–369, § 143(a), 98 Stat. 494, 682, raised the percentage penalty from 10% to 20% of the gross income derived. This increase became effective July 18, 1984. Accordingly, at the time of the assessment against plaintiff, the penalty was still 10% of the gross income derived.

**3.** The Fourth Circuit is the only Circuit to have considered this issue although it affirmed the district court without opinion.

**4.** The court mentioned that "when Congress has intended to levy a penalty on each act, it has said so specifically." For example, the penalty for failing to file an information return or regis-

tration statement applies "in the case of each failure." 26 U.S.C. § 6652(a). The penalty for failing to furnish a statement to an employee, 26 U.S.C. § 6674, or to supply a taxpayer identifying number, § 6676, or to supply information on a place of residence, § 6687, applies to "each such failure." In addition, other terms used by Congress include "with respect to each such document" and "for each person."

**5.** For example, if X sells 40 units at $500 per unit to 40 different people, he will be penalized in the sum of $40,000. However, since he only received $20,000, the Service will abate the penalty to $20,000. Hence, a total forfeiture of income.

sell.[6] However, using the Service's interpretation, two salesmen who sell the same amount can be penalized in different degrees depending on their sales techniques. This result is not supported by any logical reading of the statute or the legislative history. Moreover, it clearly contravenes the principles of statutory construction which require courts to avoid harsh, unjust, oppressive or arbitrary results.

### III. Legislative History Supports Plaintiff's Interpretation

Although the history of section 6700 does not reveal the intent of Congress concerning the interpretation of the penalty provision, the history of the Tax Reform Act of 1984, Pub.L. No. 98-369, § 143(a), 98 Stat 494, 682, which raised the penalty from 10% to 20% of income derived from the activity, is helpful. It suggests that the intent of Congress was for the $1,000 amount to be a minimum penalty which applies only to small promoters 10% of whose overall income would not yield a meaningful penalty. The House Committee Report on the 1984 Act ("the Report") states:

> The bill increases the penalty for promoting abusive tax shelters to the greater of 20% of the gross income derived, from the activity, or $1,000. The committee did not increase the $1,000 penalty because, as originally enacted, the $1,000 penalty was intended to be a minimum penalty on small promoters who derive little income from the deals they promote.

H.R.Rep. No. 432, 98th Cong., 2d Sess. 1, 1357–1358, *reprinted* in 1984 U.S.Code Cong. & Admin.News, 697, 1009.

An intelligent reading of this report coincides with the plaintiff's interpretation. Using the previously mentioned illustration, where two salesmen sell the same number of units, make the same profit, but sell to a different number of investors, how can the one who sold to more people be deemed a "small promoter" when the $1,000 penalty is applied to each of his sales? Both salesmen derived the same income and, at income levels of $30,000, neither were "small promoters." This result, therefore, defies all logic. Small promoters, within the meaning of the Report, are those who make less than a $10,000 profit (10% of their income is less than $1,000). The $1,000 amount is a minimum penalty to insure that they are sufficiently penalized. There is absolutely no rational basis for more strictly penalizing those who sell less units to more people.

In *Hersch v. United States*, 685 F.Supp. 325 (E.D.N.Y.1988), plaintiff was assessed a penalty of $800,000 for 800 sales. The penalty was reduced to $234,600, plaintiff's gross income for the years in question. My learned and able colleague, Judge Charles P. Sifton, after an analysis of the language of the statute and the legislative history, found the plaintiff's interpretation more appropriate. In the course of a well reasoned opinion, Judge Sifton of this Court stated that

> The report made clear that the $1,000 amount was not to be compounded as a means of punishing high volume tax shelter promoters. Rather, it set a minimum to be applied when the 10% of gross income derived from the activity fell below $1,000.

*Hersch v. United States*, 685 F.Supp. 325, 331 (E.D.N.Y.1988)

Although the Service will argue that the view of a subsequent Congress is a hazardous basis for inferring the intent of an earlier Congress, the Supreme Court has repeatedly held that a subsequent legislature declaring the intent of an earlier statute is entitled to "significant weight." *Hersch*, 685 F.Supp. at 331, quoting *NLRB v. Bell Aerospace*, 416 U.S. 267, 275, 94

---

**6.** To clarify this point, the following example is helpful. Suppose that two promoters have 10 units to sell at $3,000 each. One sells one unit each to 10 different people and is penalized $10,000 (the greater amount of 10% of each sale ($300) × 10 sales (total $3,000) and $1,000 × 10 sales ($10,000)). However, the other salesman sells all 10 units to one person and is penalized only $3,000 (the greater amount of 10% OF EACH SALE ($3,000) × 1 sale (total $3,000) and $1,000 × 1 sale ($1,000)). This produces different results according to how many investors a salesman sells; scarcely an equitable result.

S.Ct. 1757, 1762, 40 L.Ed.2d 134 (1974). *See also Seatrain Shipbuilding Corp. v. Shell Oil Company*, 444 U.S. 572, 100 S.Ct. 800, 63 L.Ed.2d 36 (1980). This is especially appropriate when the intent of the earlier Congress is as disputed as in the present case.

Although there is some authority that supports the Service's interpretation, these cases fail to engage in well reasoned analysis. For example, in *Waltman v. United States*, 618 F.Supp. 718 (M.D.Fla.1985), the court's sole reason for concluding that the prohibited act was the sale of "an interest" in a tax shelter was that the language of the statute dictates this result. The court completely disregarded the fact that the plain language of the statute is ambiguous. The task is to determine which interpretation is most logical and reasonable. Therefore, the *Waltman* court did not even address the issue.

*Bean v. United States*, 618 F.Supp. 652 (N.D.Ga.1985), is another example of an inadequate analysis. Plaintiff was assessed a penalty of $89,000 based on $1,000 per partnership interest sold to 89 investors. He claimed the penalty assessed should have been 10% of $73,750, his gross income from the promotional activity. The court in accepting the Service's interpretation, reasoned that (1) the Service's assessment should be presumed appropriate, and (2) another court [*McGrew v. U.S.*, 85–0513 Civ.ORL. (M.D.Fla.1985)] faced with the same issue concluded that "activity" refers to an individual sale. The court did not discuss the legislative history or analyze the meaning of "activity." The Service points to both *Bean* and *Waltman* in support of its interpretation. However, neither decision discussed the relevant legislative history or engaged in a logical analysis of the language of the statute.

To support its theory that the penalty should be assessed against each individual sale of an interest rather than against the combined total income from tax shelter activities, the Service relies on *Waltman v. United States* and *Bean v. United States* which followed the Service's interpretation of section 6700. However, these decisions were based on the "plain meaning" of the statute *as interpreted by the Service.* The *Waltman* court summarily states that "[t]he prohibited 'activity' is the sale of an 'interest' in a tax shelter" without any statutory analysis or examination of the legislative history. *Waltman*, 618 F.Supp. at 720. Likewise, the *Bean* court based its decision on a presumption that "the amount assessed by the Government should be presumed appropriate." *Bean*, 618 F.Supp. at 659.

In *Johnson v. United States*, 677 F.Supp. 529 (E.D.Mich.1988), the plaintiff questioning the penalty assessment had sold four interests to four separate investors in energy saving units. The penalty was assessed at $1000 per sale for a total of $4,000. The court based its decision on the "reasonableness of the interpretation" put forth by the Service. The court considered the Service's position reasonable because "the *Waltman* court accepted the Internal Revenue Service's interpretation" and because "decisions made by the Internal Revenue Service are entitled to deference because Congress has delegated the administration of the tax laws to that agency." *Johnson*, 677 F.Supp. at 531. Therefore, the Service relies on cases that fail to approach the issue in an intellectual, authoritative manner. The conclusions of these cases, therefore, deserve little weight. Substantial weight must be given to an opinion of this Court and, while not binding but persuasive authority, the only Circuit Court to consider this issue has found for the taxpayer.

CONCLUSION

In light of the above mentioned reasons, it is clear that the Service incorrectly assessed the penalty under section 6700 of the Internal Revenue Code. The language of the statute, the impracticality of the Service's interpretation and the legislative history support the view that the $1,000 amount is a minimum penalty for small promoters whose income does not yield a meaningful penalty to deter promotion of abusive tax shelters. It is not to be compounded so as to punish high volume promoters. Therefore, plaintiff's motion for

summary judgment should be granted and the penalty should be reassessed.

SO ORDERED.