**Illya BOND, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

No. 88-5799.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 8, 1988.

Decided April 13, 1989.

Robert C. Bonner, U.S. Atty., William S. Rose, Jr., Asst. Atty. Gen., Charles H. Magnuson, Asst. U.S. Atty., Gary R. Allen, Jonathan S. Cohen, and Linda E. Mosakowski, U.S. Dept. of Justice, Tax Office, Washington, D.C., for defendant-appellant.

Bryan K. Sheldon, Sigel, Boothe & Sheldon, Los Angeles, Cal., for plaintiff-appellee.

Before WALLACE, POOLE and O'SCANNLAIN, Circuit Judges.

POOLE, Circuit Judge:

The United States appeals from a decision by the district court limiting penalties assessed by the Internal Revenue Service against Illya Bond ("Bond"). The district court determined that penalties for the sale of abusive tax shelters imposed under 26 U.S.C. § 6700 are to be calculated as a percentage of the gross income, not based on the number of individual sales transactions. We affirm.

FACTS AND PROCEEDING BELOW

During 1982, 1983, and 1984, Bond was Vice President and Secretary of H & L Schwartz, Inc. ("Schwartz"). Schwartz operated two divisions, American Educational Leasing ("AEL") and American Videogame Leasing ("AVL"). Investors would lease audio cassette masters and videogame masters from the respective divisions.

The Internal Revenue Service ("IRS") held that the investment programs in AEL and AVL were abusive tax shelters within the meaning of 26 U.S.C. § 6700. Bond organized and participated in the sale of interests in the tax shelters, in violation of section 6700(a)(1)(A) and (B). Additionally, Bond prepared statements that misrepresented the value of the leased masters, in violation of section 6700(a)(2)(B). In the years at issue, Bond marketed 1106 leases to investors. He received a gross income of $804,650 over the three year period.

In July, 1984, the United States filed an action in district court against Bond and others involved in Schwartz for a permanent injunction prohibiting the sale of abusive tax shelters. The IRS assessed penalties against Bond in amounts of $546,250 for 1982 and $5,200 for 1983 sales. Pursuant to 26 U.S.C. § 6703(c), Bond paid 15% of the penalties and filed claims for a refund. Bond subsequently filed an action seeking a refund of the penalties. The two suits were consolidated before the district court.

The district court held that Bond had sold abusive tax shelters in violation of section 6700 and granted the permanent injunction. The court then determined that the penalty formula of section 6700 was to be applied based on gross income and not on a per sales transaction basis, and assessed total penalties in the amount of $80,465. The government timely filed this appeal.

Because this appeal involves an issue of statutory interpretation, the district court's holding is reviewable *de novo*. *Orvis v. Commissioner*, 788 F.2d 1406, 1407 (9th Cir.1986).

## DISCUSSION

■ The issue we address is whether the penalties provided under 26 U.S.C. § 6700 (1982), as originally enacted,[1] are to be calculated based on the gross income derived from the tax abusing shelter or to be assessed based on the flat $1,000 flat fee

multiplied by the *number* of individual transactions during the tax year. We conclude the proper basis is that of gross income.

The pertinent part of this section states: SECTION 6700. PROMOTING ABUSIVE TAX SHELTERS, ETC.

(a) *Imposition of Penalty.*—Any person who—

(1)(A) organizes (or assists in the organization of)—

(i) a partnership or other entity,

(ii) any investment plan or arrangement, or

(iii) any other plan or arrangement, or

(B) participates in the sale of any interest in an entity or plan or arrangement referred to in subparagraph (A), and

(2) makes or furnishes (in connection with such organization or sale)—

(A) a statement with respect to the allowability of any deduction or credit, excludability of any income, or the securing of any other tax benefit by reason of holding an interest in the entity or participating in the plan or arrangement which the person knows or has reason to know [sic] is false or fraudulent as to any material matter, or

(B) a gross valuation overstatement as to any material matter,

shall pay a penalty equal to the greater of $1,000 or 10 percent of the gross income derived or to be derived by such person from such activity.

The United States contends the penalty must be imposed per transaction. The government argues section 6700 requires the imposition of a $1,000 penalty on each transaction or, if the promoter made more than $10,000 on each sale, 10% of that gross income. The government claims that the plain meaning of the words "such activity" is in reality "each sale."

Bond also contends that the "plain meaning" of the statute mandates a decision in his favor. He argues that the correct pen-

---

1. This section was amended by the Tax Reform Act of 1984, Pub.L. No. 98–369 § 143(a), 98 Stat. 494, 682 (1984), which raised the penalty from 10% to 20% of gross income derived from "such activity." *See* 26 U.S.C. § 6700 (Supp. III 1985).

alty should be 10% of the cumulative income he derived from all the interests he sold during each of the years at issue. The $1,000 penalty is merely a minimum amount to be assessed against any promoter.

There is a dearth of decisions by the court of appeals, but district courts are divided as to which interpretation to follow. Some have held that the government is correct. *See Johnson v. United States,* 677 F.Supp. 529, 531 (E.D.Mich.1988); *Waltman v. United States,* 618 F.Supp. 718, 720 (M.D.Fla.1985). Other courts have determined that Bond's position is the proper interpretation. *In re Tax Refund Litigation,* 698 F.Supp. 439, 443–44 (E.D.N.Y. 1988); *Hersch v. U.S.,* 685 F.Supp. 325, 330–31 (E.D.N.Y.1988); *Spriggs v. United States,* 660 F.Supp. 789, 793 (E.D.Va.1987) *aff'd per curiam,* 850 F.2d 690 (4th Cir. 1988).

Unfortunately, the legislative history of the original act offers little assistance in determining the meaning of "such activity" or as to the correct method of imposing the penalties contained in section 6700. Congress enacted section 6700 as part of the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248, 96 Stat. 324, §§ 320, 321 (1982).

The contemporaneous legislative history is ambiguous. The Senate committee report states:

> The penalty for promoting an abusive tax shelter is an assessable penalty equal to the greater of $1,000 or 10 percent of the gross income derived, or to be derived, from the activity.... If the Internal Revenue Service cannot determine the entire amount of the gross income from an activity, it may assess the penalty on the portion of such gross income that may be determined.

S.Rep. No. 97–494, 97th Cong., 2d Sess. 1, 267 (1982) *reprinted in* 1982 U.S.Code Cong. & Admin.News 781, 1015.

The above quotation implies that the percentage penalty is the one to be utilized, rather than the $1,000 fee. The number of transactions is not mentioned in the committee report. The gross income of the promoter is what the penalty is to be assessed upon.

Section 6700 was amended in 1984 with a key change. The penalty percentage was increased from 10 to 20 percent of the promoter's gross income derived from "such activity." The reason for the amendment, stated in the committee report, was that:

> The attention of the committee has been drawn to evidence that the 10–percent penalty enacted in TEFRA is inadequate in amount since promoters of tax shelters operate on a large margin.

H.R.Rep. No. 97–432, 98th Cong., 2d Sess 1357 (1984), *reprinted in* 1984 U.S.Code Cong. & Admin.News 697, 1009. The above quoted section shows congressional intent to utilize a percentage, rather than fixed fee, penalty. This intent is shown more forcefully in the committee's explanation of why the $1,000 penalty was not increased:

> The bill increases the penalty for promoting abusive tax shelters to the greater of 20 percent of the gross income derived, or to be derived, from the activity, or $1,000. The committee did not increase the $1,000 because, as originally enacted, the $1,000 was intended to be a minimum penalty on small promoters who derive little income from the deals they promote.

*Id.* (emphasis added).

It seems clear that Congress intended the flat fee penalty as a minimum deterrent, not to be multiplied to punish the volume promoter. Bond is obviously not one of the "small promoters who derive little income" when he made in excess of $800,000. The appropriate sanction is the percentage penalty, rather than $1,000 per sale, which would result in a whopping $1,106,000 fine.[2]

If Congress had intended to create a flat fee fine per transaction, we are confident that it would have employed apt language to clearly state this intent. That is not the case here. The only reasonable interpreta-

2. Although the IRS Commissioner may waive a portion of the penalty, under section 6700(b), the full amount could be assessed.

tion of the statute and amendment is that the percentage penalty is to be used unless it would result in a fine of less than $1,000.

A well-reasoned opinion of the district court in *Spriggs,* 660 F.Supp. 789, held the $1,000 assessment to be a minimum penalty. That court, in a case identical to the one presented here, rejected the government's contention, based on the legislative history of the 1984 amendment, that penalties should be assessed for each transaction. The court observed that under the government's interpretation, two promoters with identical incomes would be subject to unequal penalties solely based on how many sales were involved. Under the contrary interpretation, the penalties assessed on the hypothetical promoters would be identical, based on 10% of the identical income. We agree with the logic of the *Spriggs* court that "[t]he proper interpretation of the statute applies the penalties evenly to all promoters." *Id.* at 792.

■ The government argues for deference to the IRS interpretation because it is a position adopted by the federal agency charged with the administration of tax laws. We should accord deference to an agency "whenever its interpretation provides a reasonable construction of the statutory language and is consistent with legislative intent." *Securities Industry Ass'n v. Board of Governors,* 468 U.S. 207, 217, 104 S.Ct. 3003, 3009, 82 L.Ed.2d 158 (1984) (citations and footnote omitted). Judicial deference is afforded to adopted Treasury Regulations. *See Commissioner v. Portland Cement Co. of Utah,* 450 U.S. 156, 169, 101 S.Ct. 1037, 1045, 67 L.Ed.2d 140 (1981). The government concedes that no Treasury Regulation has been adopted regarding this penalty. Since the government's interpretation in this situation strikes us as being neither consistent with legislative intent nor a reasonable construction of the statute, we do not agree that deference is appropriate.

The government argues against calculating penalties on an annual basis. However, 26 U.S.C. § 6671(a) states specifically that "penalties and liabilities provided for by this subchapter ... shall be assessed and collected in the same manner as taxes ..." The subchapter referred to, 68B, includes section 6700 penalties. While this provision is not necessarily conclusive of the issue, it is of substantial significance that taxes are assessed and collected on an annualized basis. Consistency would seem to support the wisdom of holding that section 6700 should be treated the same.

In summary, we hold that the penalties imposed under section 6700 are to be calculated based on the gross income derived from the abusive tax shelter. The flat fee comes into play as a minimum penalty only when the percentage would yield a fine of less than $1,000.

The judgment of the district court is AFFIRMED.