In re Robert J. BURNS, Debtor.

Robert J. BURNS, Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 91–15882.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 9, 1992.

Decided Aug. 31, 1992.

Jon R. Vaught, Day Law Corp., Oakland, Cal., for plaintiff-appellant.

Edward T. Perlemuter, Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant-appellee.

Before: ALARCON, HALL, and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

This case turns on a single issue. An IRS assessment was too high, because the IRS used an erroneous legal theory. The taxpayer argues that the assessment was void and the lien and money collected under it must be released. The IRS would then proceed under a reduced assessment and a new lien as of the date of the reduced assessment. The Commissioner argues that the effective date of the original assessment and lien must be maintained, and only reduced in amount. We are per-

suaded that the controlling statutes require us to adopt the Commissioner's view.

## I. Facts

Between 1982 and 1984, Robert Burns was a co-director of marketing for United Energy Corporation. In February 1984, the Internal Revenue Service enjoined United Energy from selling tax shelters in violation of 26 U.S.C. § 6700.[1] The United States assessed Robert Burns $3,668,318.65 for penalties under 26 U.S.C. § 6700 and interest, made demand, and filed a lien for that amount. Burns filed for bankruptcy. Subsequently, we held in *Bond v. United States*, 872 F.2d 898 (9th Cir.1989), that the method used to assess Burns was improper. We determined that the IRS could not impose a separate minimum $1,000 penalty under § 6700 for each transaction. *Id.* at 901. To conform to *Bond*, the United States reduced Burns' assessment to $526,884.23.

Burns then moved in the bankruptcy court to have the lien released because it was based on an original assessment that had become void. The bankruptcy court rejected this argument, the district court granted summary judgment to the government, and we affirm.

## II. Standard of Review

■ This court reviews the grant of summary judgment de novo. *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir.1991); *United States v. Hunter Engineers & Contractors, Inc.*, 789 F.2d 1436, 1437 (9th Cir.1986), *cert. denied*, 479 U.S. 1063, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987).

1. 26 U.S.C. § 6700(a), as in effect at the time at issue, provided:

Any person who—
(1)(A) organizes (or assists in the organization of)—
(i) a partnership or other entity,
(ii) any investment plan or arrangement, or
(iii) any other plan or arrangement, or
(B) participates in the sale of any interest in an entity or plan or arrangement referred to in subparagraph (A), and
(2) makes or furnishes (in connection with such organization or sale)—

## III. Abatement of Excessive Assessment

■ Federal tax liens are governed by federal statutes. *United States v. Brosnan*, 363 U.S. 237, 240, 80 S.Ct. 1108, 1110, 4 L.Ed.2d 1192 (1960). Burns argues that he was entitled to a release of the tax lien under the release of lien statute, 26 U.S.C. § 6325:

**(a) Release of lien**

Subject to such regulations as the Secretary may prescribe, the Secretary shall issue a certificate of release of any lien imposed with respect to any internal revenue tax not later than 30 days after the day on which—

**(1) Liability satisfied or unenforceable**

The Secretary finds that the liability for the amount assessed, together with all interest in respect thereof, has been fully satisfied or has become legally unenforceable;

26 U.S.C. § 6325(a) (1988). Burns' argument depends on treating "legally unenforceable" as equivalent to "excessive in amount," an unpersuasive construction. The related treasury regulation adds the word "entire" to modify liability unenforceable as a matter of law. Treas.Reg. § 301.-6325–1(a) (lien released "whenever [the Secretary] finds that the *entire* liability for the tax has been satisfied or has become unenforceable as a matter of law ....") (emphasis added). In Burns' case, only part of the amount is unenforceable. Therefore, § 6325(a)(1) does not require release of the lien.

Reductions in excessive assessments, as opposed to assessments which become legally unenforceable in their entirety, are governed by the abatement statute, 26 U.S.C. § 6404(a):

(A) a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit by reason of holding an interest in the entity or participating in the plan or arrangement which the person knows or has reason to know is false or fraudulent as to any material matter, or
(B) a gross valuation overstatement as to any material matter,
shall pay a penalty equal to the greater of $1,000 or 20 percent of the gross income derived or to be derived by such person from such activity.

(a) The Secretary is authorized to abate the unpaid portion of the assessment of any tax or any liability in respect thereof, which—

(1) is excessive in amount, or

. . . .

(3) is erroneously or illegally assessed.

26 U.S.C. § 6404(a) (1988). This statute speaks directly to the problem of an assessment excessive in amount because it was computed on an erroneous legal theory. The Secretary is authorized by the statute to "abate" the assessment, which means to reduce the assessment in amount, not to strike it or treat it as void. In addition, § 6404(a) refers to abating a "portion," implying that abatement is not an all-or-nothing proposition. Under Burns' theory that an improperly calculated assessment voids the lien, this abatement statute becomes meaningless. We "avoid any statutory interpretation that renders any section superfluous and does not give effect to all of the words used by Congress." *Central Mont. Elec. Power Co-op, Inc. v. Administrator of Bonneville Power Admin.,* 840 F.2d 1472, 1478 (9th Cir.1988).

Our construction is in accord with long established precedent in similar cases. In *United States v. Rindskopf,* 105 U.S. 418, 26 L.Ed. 1131 (1881), the parties disputed the quantity of taxable liquor distilled. The Court held that the lower court "erred in instructing the jury that the assessment was to be taken and considered in its entirety, and that the government was entitled to recover the exact amount assessed, or not any sum." *Id.* 105 U.S. at 422. The taxpayer could show that he distilled less liquor, and "in part" overthrow the assessment. *Id.*

This is not to say that a lien based on an incorrect assessment always survives. *Rindskopf* recognized the existence of a category of assessments which could not be abated:

There may undoubtedly be cases where an assessment must stand as an entirety, or not at all; as where an erroneous rate has been adopted by the officer; or where it is impossible to separate from the property assessed the part which is

exempt from the tax; or where its validity depends upon the jurisdiction of the commissioner. The present case does not fall within either of these classes. Here the question is as to the quantity of spirits produced on which taxes were not paid.

*Id.*

Another formulation appears in *United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976). In *Janis,* the issue was whether the exclusionary rule extended to federal tax proceedings, where the evidence was obtained by state officials pursuant to an invalid search warrant. The court determined that, were the evidence excluded, then "[w]hat we have is a 'naked' assessment without *any* foundation whatsoever." *Id.* at 441, 96 S.Ct. at 3026. The court assumed that "[c]ertainly, proof that an assessment is utterly without foundation is proof that it is arbitrary and erroneous." *Id.* at 442, 96 S.Ct. at 3026. In *Heck v. Walters,* 523 F.2d 23 (9th Cir.1975), we did not reach the question before us now, but we did conclude that an assessment remained valid "so far as uncorrected." *Id.* at 24.

The Seventh Circuit reached the same conclusion we do when the IRS erroneously made too high an assessment. *United States v. Schroeder,* 900 F.2d 1144 (7th Cir.1990). *Schroeder* distinguishes a case such as the one hypothesized in *Janis,* when the assessment is "naked . . . without *any* foundation whatsoever," from one when the assessment is "arbitrarily computed and excessive in amount." In the latter case the "liability is merely adjusted to coincide with the proof." *Id.* at 1148–49.

None of the exceptions to the abatement rule apply here. Burns does not dispute that the IRS made a good faith calculation on a legal theory which later turned out to be erroneous, and then reduced the assessment and lien, in accord with the abatement statute, to comply with *Bond v. United States,* 872 F.2d 898 (9th Cir.1989). This case is analogous to the erroneous quantity of liquor situation in *Rindskopf,* when the assessment may be reduced "in part."

## IV. Due Process

■ Burns argues that allowing the government to keep its lien when it reduces the assessment by a factor of seven denies the taxpayer due process. He begins from the premise that 26 U.S.C. § 6703(c)(1)[2] requires a taxpayer to pay fifteen percent of the penalty within thirty days of the notice and demand of the assessment in order to challenge the assessment before collection. He argues that when the government so greatly overassesses the taxpayer, the taxpayer's due process rights are violated because his ticket to court for judicial review costs seven times as much as it should, roughly $550,000 instead of $79,000. Because Burns received judicial review of his assessment in his bankruptcy proceedings, he lacks standing to pursue this claim, and we do not reach it.

## V. Our Unpublished Disposition

Burns argues that we have already decided that the assessment was "void" in an unpublished opinion, *Lampert v. United States,* 884 F.2d 1395 (9th Cir.1989). Under Ninth Circuit Rules, unpublished opinions shall not be cited "except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel." 9th Cir.R. 36–3. Burns uses the *Lampert* decision in his brief both for a collateral estoppel argument and as precedent.

■ The collateral estoppel argument is incorrect. The Lamperts owned United Energy Corporation, the tax shelter promoter for which Burns worked. The IRS made the same assessment error against the Lamperts as against Burns, multiplying the $1,000 minimum penalty under 26 U.S.C. § 6703(a) by the number of abusive tax shelters sold. The Lamperts sued for an injunction against collection of the erroneously calculated penalty. The issue be-

fore us, however, was not whether an excessive assessment is abated in part or void, but rather whether the district court had jurisdiction under the exception to the Anti–Injunction Act where "it is clear that under no circumstances could the government ultimately prevail." *Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962). We held that the exception applied, because under *Bond* the penalty was erroneously calculated, so the government could not under any circumstances ultimately prevail on the merits. In addition, nonmutual offensive collateral estoppel is unavailable against the government. *National Medical Enterprises v. Sullivan,* 916 F.2d 542, 545 (9th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 2014, 114 L.Ed.2d 100 (1991). Our rule against citation of unpublished dispositions prevents, among other things, every unpublished disposition unfavorable to the government from being effectively "published" by the collateral estoppel exception to Rule 36–3.

We used the phrase that the assessment "was improperly calculated and therefore void," *Lampert,* slip op. at 2, and remanded the case to the district court "with instructions to remand the matter back to the Tax Service for reconsideration of the penalty assessment," *id.* at 7–8. Burns argues that because we used the word "void" in *Lampert,* the assessment is "void" here, so the lien must be released under 26 U.S.C. § 6325(a)(1) because the liability "has become legally unenforceable." Since collateral estoppel is unavailable both because it would be against the government and because the issue was not litigated in *Lampert,* this is an argument for use of the unpublished *Lampert* decision as precedent, barred by the rule. Because we did not publish, we did not have to resolve how

---

**2.** 26 U.S.C. § 6703(c)(1), as in effect at the time at issue, provided:

If, within 30 days after the day on which notice and demand of any penalty under section 6700, 6701, or 6702 is made against any person, such person pays an amount which is not less than 15 percent of the amount of such penalty and files a claim for refund of the amount so paid, no levy or proceeding in court for the

collection of the remainder of such penalty shall be made, begun, or prosecuted until the final resolution of a proceeding begun as provided in paragraph (2). Notwithstanding the provisions of section 7421(a), the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court.

the word "void" might work as precedent in unrelated cases.

Our rule against citing unpublished opinions serves a significant judicial purpose, beyond moderating the number of pages in Federal Reporter. We rely upon previous court decisions as precedent in order to treat like cases alike. The ratio decidendi is the principle which explains why certain facts in a certain procedural context compel a certain conclusion, which is not necessarily the same as the literal meaning of the words used to articulate the principle in the particular case. Karl Llewellyn, *The Bramble Bush* 39, 47 (1930). We publish when our disposition "[e]stablishes, alters, modifies or clarifies a rule of law" in this circuit. 9th Cir.R. 36–2. The rule of law, not the form of words, constitutes the principle we must apply to treat like cases alike. If our disposition does not establish, alter, modify or clarify a rule of law, because the rule of law is fully and clearly established by prior authority, then we do not publish, where none of the alternative grounds for publication pertain. *Lampert* was not published, because we found that the case was controlled by a rule already clearly and fully established by published authority in this circuit. For that reason, *Lampert* could not be properly understood as establishing a rule, so a citation to it could have no force.

Our rule against publication of such a disposition keeps the books from being cluttered with dicta that could result in confusion for lawyers and tribunals addressing similar issues. This permits us to resolve the issues concretely before us without the need to state the facts and how the case arose in order to display the context for purposes of future distinctions of the case from others, and without laboring to refine our language lest it be taken out of context. In an unpublished memorandum disposition, we seek only to explain our decision to the parties and a court or agency which may have to work with the disposition after remand. *See generally* Lauren K. Robel, *Caseload and Judging:*

*Judicial Adaptations to Caseload,* 1990 B.Y.U.L.Rev. 3, 50–51.

AFFIRMED.