**GRANT, KONVALINKA & HARRISON, P.C.,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

No. 1:07–CV–88.

United States District Court,
E.D. Tennessee,
at Chattanooga.

Jan. 27, 2009.

William T. Ramsey, Neal & Harwell, Nashville, TN, for Plaintiff.

Hilarie Elise Snyder, U.S. Department of Justice, Washington, DC, for Defendant.

## MEMORANDUM & ORDER

CURTIS L. COLLIER, Chief Judge.

Plaintiff Grant, Konvalinka & Harrison moves for partial summary judgment as to the maximum amount of a penalty that can be assessed against it by the United States. Having considered the parties' briefs, the applicable law, and the evidence, the Court **DENIES** Plaintiff's motion (Court File No. 29).

## I. RELEVANT FACTS

Plaintiff is a law firm which sued the United States seeking a refund and abatement of a penalty issued against it by the Internal Revenue Service. The IRS assessed the penalty because it concluded Plaintiff violated 26 U.S.C. § 6700 by making statements or causing another person to make statements that were false or that the firm had reason to know were false concerning the tax exempt status of interest earned on certain bonds (the "Bonds"). The Bonds had been issued on December 31, 1991 by four separate Georgia development authorities, which each issued three series of. bonds, A, B, and C. The federal government essentially subsidizes state and local governments by not taxing income earned on state and local government bonds, thus allowing them to borrow money at lower interest rates. *See* 26 U.S.C. § 103. But this tax exemption does not apply to arbitrage bonds. *Id.* § 103(b)(2).

The state developmental authorities issued the Bonds to lend money to a nonprofit company to purchase four separate nursing homes. Medical Resources Company sold the nursing homes and received the Series A and C bonds. In March and December 1992, Medical Resources Company, with assistance from Plaintiff and others, purportedly "defeased and remarketed" the Series A and C bonds. The government contends the transaction that occurred was a taxable, arbitrage-driven transaction. In conjunction with the transaction, Plaintiff issued eight tax opinions, wrote several legal memoranda, and provided legal advice. It received at least $570,870.49 for its services.

The remarketing and defeasance of the Bonds was done by J.C. Bradford, an investment banking firm. In remarketing the Series A and C bonds, J.C. Bradford and purchasers of the Bonds allegedly relied on Plaintiff's tax opinions stating that the reoffering would be a tax-exempt bond issue. The government contends J.C. Bradford sold the Series A and C bonds in 107,756 increments of $5,000 each.

The IRS concluded a penalty should be assessed because Plaintiff made false statements in connection with the tax-exempt status of the Bonds. The IRS issued Plaintiff a notice on January 3, 2005 assessing a penalty of $570,870.49. The IRS concluded Plaintiff engaged in 107,756 activities, which would create a penalty of $107,756,000. Because 100% of the gross income ($570,870.49) was less than that, the amount of gross income was assessed as the penalty. Plaintiff paid the penalty and filed a request for a refund.

## II. STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

First, the moving party must demonstrate no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir.2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus.*

Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Nat'l Satellite Sports, Inc. v. Eliadis Inc., 253 F.3d 900, 907 (6th Cir.2001). However, the non-movant is not entitled to a trial based solely on its allegations, but must submit significant probative evidence to support its claims. Celotex, 477 U.S. at 324, 106 S.Ct. 2548; McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing on an essential element for which it bears the burden of proof. Celotex, 477 U.S. at 323, 106 S.Ct. 2548. In short, if the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court may enter summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir.1994).

## III. DISCUSSION

 Plaintiff argues that the maximum penalty should be $16,000, for 16 activities, as opposed to $107,756,000 for 107,756 transactions. Plaintiff reaches 16 activities by adding together the four Series A bonds it remarketed, the four Series C bonds it remarketed, and the eight opinion letters it rendered for those remarketings. Thus, Plaintiff contends there were eight opinions rendered and eight remarketings, for a total of sixteen separate activities. The government disputes Plaintiff's reading of the statute and contends Plaintiff is liable for 100 percent of the gross income derived from the bond remarketing and defeasance, because such income is less than $1,000 for each of 107,756 activities.

The dispute concerns the proper interpretation of 26 U.S.C. § 6700. The parties agree the relevant version of the statute is the one in effect between 1989 and 2004:

Promoting abusive tax shelters, etc.

(a) Imposition of penalty. Any person who—

(1) (A) organizes (or assists in the organization of)—

(i) a partnership or other entity,

(ii) any investment plan or arrangement, or

(iii) any other plan or arrangement, or

(B) participates (directly or indirectly) in the sale of any interest in an entity or plan or arrangement referred to in subparagraph (A), and

(2) makes or furnishes or causes another person to make or furnish (in connection with such organization or sale)—

(A) a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit by reason of holding an interest in the entity or participating in the plan or arrangement which the person knows or has reason to know is false or fraudulent as to any material matter, or

(B) a gross valuation overstatement as to any material matter, shall pay, with respect to each activity described in paragraph (1), a penalty equal to the $ 1,000 or, if the person establishes that it is lesser, 100 percent of the gross income derived (or to be derived) by such person from such activity. For purposes of the preceding sentence, activities described in paragraph (1)(A) with respect to each entity or arrangement shall be treated as a separate activity and participation in each sale

described in paragraph (1)(B) shall be so treated.

26 U.S.C. § 6700.

The 1989 version of the statute differs from the one enacted in 1982. In the 1982 version, the penalty was the greater of $1,000 or 10% of the income derived from the activity. *Gates v. United States,* 874 F.2d 584, 587 (8th Cir.1989); *Bond v. United States,* 872 F.2d 898, 900 (9th Cir. 1989). In 1984, Congress sought greater deterrence by increasing the possible penalty based on income to 20%. Two circuit courts held the alternative $1000 penalty was not meant to punish high-volume tax shelters, but was rather a minimum penalty to be applied when 20% of the gross income fell below $1000. *Gates,* 874 F.2d at 587; *Bond,* 872 F.2d at 900. But, as *Bond* noted, 872 F.2d at 900, some courts held the $1,000 penalty applied per transaction. *Johnson v. United States,* 677 F.Supp. 529, 531 (E.D.Mich.1988); *Waltman v. United States,* 618 F.Supp. 718, 720 (M.D.Fla.1985).

Congress modified the statute in 1989 with three changes of relevance here. First, the penalty scheme was changed to impose a penalty of $1,000 "with respect to each activity described in paragraph (1)" or 100 percent of the income derived from such activity, whichever is less. Second, the parenthetical words "(directly or indirectly)" were added after "participates" in § 6700(a)(1)(B). Third, the final sentence was added to § 6700(a), stating: "For purposes of the preceding sentence, activities described in paragraph (1)(A) with respect to each entity or arrangement shall be treated as a separate activity and participation in each sale described in paragraph (1)(B) shall be so treated."

Applying traditional tools of statutory construction, the Court concludes Plaintiff's position is not correct. The statute imposes a penalty with respect to each activity described, and one of those activi-ties is participating indirectly in the sale of any interest in a plan or arrangement. Assuming that a bond offering is a plan or arrangement, the sale of any interest in that bond would spark liability by anyone who participates in the sale, directly or indirectly. Plaintiff is alleged to have indi-rectly participated in numerous sales by providing tax opinions that were relied on by purchasers of the Bonds. This conclu-sion finds explicit support in the statutory language that "participation in each sale" shall be treated as a separate activity.

In support of its position, Plaintiff relies exclusively and extensively on *Hargrove & Costanzo v. United States,* 2008 WL 4133928, 2008 U.S. Dist. LEXIS 79606 (E.D.Cal. September 4, 2008). That case appears to be the only one to address this issue in the 1989–2004 version of the stat-ue. Analyzing the statutory language, *Hargrove* concluded that a person is sub-ject to a penalty when he or she "partici-pates" in the "sale of any interest in an entity," not where there is a "sale" or "any interest." *Id.* at *6, 2008 U.S. Dist. LEX-IS 79606, *18–19. Focusing on "an enti-ty," the court concluded Congress restrict-ed the scope of a sale to "per entity," not multiple transactions per entity. *Id.* at *6, 2008 U.S. Dist. LEXIS 79606, at *19. "Activities are 'with respect to' each entity. Participation in each sale is 'with respect to each entity.' Thus, an activity must be with respect to an entity." *Id.* at *6, 2008 U.S. Dist. LEXIS 79606, at *19. The court rejected the government's contention that the statute penalizes multiple sales for each entity because the statute does not say "sales of any interest in an entity." *Id.* at *6–7, 2008 U.S. Dist. LEXIS 79606, at *20–21. The court stated multiple sales per entity would be proper if the statue had said "sales of any interest in an enti-ty." *Id.*

The Court respectfully declines to follow *Hargrove*. The statutory language does not limit the number of sales in an entity to one. Rather, the statute imposes a penalty any time an offender participates in the sale of an interest in an entity, and it places no limit on the number of times one may participate in the sale of an interest. *Hargrove*'s emphasis on plural versus singular is misguided. *See* 1 U.S.C. § 1 ("In determining the meaning of any Act of Congress, unless the context indicates otherwise—words importing the singular include and apply to several persons, parties, or things ...") *Hargrove*'s conclusion that the statute would permit a penalty for multiple sales in an entity if the text stated "sales of any interest in an entity," suggests the entire decision turns on whether *sale* is singular or plural. And yet the statute authorizes a penalty every time a person participates in a sale and then states participation in each sale shall be treated as a separate activity.

Although the Court is not necessarily concluding the government's interpretation of the statute is correct, it does not find Plaintiff's interpretation correct.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's motion for partial summary judgment (Court File No. 29).

**SO ORDERED.**